ALEXANDER D. CAMPBELL vs. JOHN H. EVELETH.

Penobscot.    Opinion September 3, 1890.  ˙

*Negligence.    Master and Servant.    Personal Injuries.    Defective Machinery.
Questions for the jury.*

An inexperienced servant does not assume the risk of perils which he knows not of, and which are not called to his attention; but of such only as he knows, or by the exercise of ordinary care ought to know.

When the negligence of neither party can be conclusively established by a state of facts from which different inferences may be fairly drawn, or upon which fair-minded men may reasonably arrive at different conclusions, the case, under proper instructions, should be submitted to the jury.

A majority of the court are of the opinion that the case falls within this principle. WALTON and EMERY, JJ., dissenting.

ON REPORT.

The parties agreed, that if the action can be maintained on the plaintiff's evidence, it should stand for trial; otherwise judgment to be entered for the defendant.

The action was to recover damages for the loss of the plaintiff's right hand while at work in the defendant's saw mill ˙ operating a lath machine, which he alleged was defectively constructed, and in the use of which he had not been properly instructed, &c.

The declaration is as follows :—

*Amended count,* charging negligence, inexperience of plaintiff and defendant's omission to give him proper instructions, &c.

Also, in a plea of the case, for that the said defendant, on the ninth day of April, 1888, was the owner, possessor and operator of a certain saw-mill and fixtures, situate in the town of Shirley, in the county of Piscataquis, then and there used by him for the manufacture of laths and other lumber, which said mill and fixtures, and saws, machines, machinery, tools and appliances placed therein, he was then and there bound to have and maintain in a safe, suitable and well-constructed condition for the safety of his employes therein employed; but the said defendant neglecting his duty in this behalf, did not then and there have and maintain said mill and fixtures, saws, machines, machinery,

tools and appliances in a safe, suitable and well constructed condition, for the safety of his employes therein employed; but on the contrary, said defendant did then and there have and maintain in said mill, a lath machine, composed of a circular saw, gearing, saw bench, and sluice or passageway, to carry off the sawdust, and other refuse from said saw and mill, which said lath machine was, then and there through the carelessness and negligence of the said defendant, defectively constructed and maintained in this, that there were no sufficient guards to said saw to protect the person operating the same with due and reasonable care from coming in contact with it while in motion, and that said sluice or passageway was so narrow, crooked, angular and otherwise improperly and defectively constructed and maintained as to cause the sawdust, and other refuse from said saw to clog in the mouth and other parts of said passageway, necessitating its frequent clearing out by the lath sawyer, which said clearing out could only be effectively and expeditiously done by a short stick or other implement in the hand of the lath sawyer, necessarily in close proximity to said saw in rapid motion.

"And the said plaintiff was then and there employed by said defendant at sawing laths with said lath machine. And the said plaintiff was then and there in the employ of said defendant, operating said lath machine, he the said plaintiff, being inexperienced in such work, and ignorant of the said dangerous and defective condition of said saw and sluice or passageway, of which said plaintiff's inexperience and ignorance the said defendant was fully aware; yet the said defendant then and there neglected to inform the said plaintiff of said dangerous and defective condition of said lath machine, sluice or passageway, and of the danger of working at said unguarded saw in motion, and said defendant also then and there neglected to inform the said plaintiff of the danger of clearing out said sluice or passageway when the same should become clogged by reason of the defective condition aforesaid of the same.

"And while the said plaintiff was so engaged in operating said lath machine, viz : in removing with due and reasonable

care on his part, by means of a short stick held in his right hand, the sawdust and other refuse that had clogged in the mouth of said sluice or passageway by reason of its said defective construction and condition, his said right hand was then and there drawn on to said unguarded saw, and so badly cut and mangled that it had to be amputated at the wrist, which caused the said plaintiff great and long continued mental and physical suffering, and put him to great expense for nursing, medicine, medical and surgical attendance, and permanently disabled him.

"Which said injury to said plaintiff was caused by reason of said defective condition of said lath machine, sluice or passageway and said plaintiff's said ignorance of the same and his said inexperience, and the said neglect of the said defendant, having knowledge of the said ignorance and inexperience of said plaintiff, to acquaint said plaintiff with said defective condition of said lath machine and said sluice or passageway, and of the danger of working at said unguarded saw, and of the danger of clearing out said passageway or sluice when the same should become clogged as aforesaid."

*Peregrine White, M. Laughlin,* with him, for plaintiff.

To justify the court in taking the case from the jury, it must be "perfectly clear" that the plaintiff has not shown that he used due care; otherwise the case must be submitted to the jury. *Hackett* v. *Middlesex Manf. Co.* 101 Mass. 104. "It must be evidence having some legal weight. A mere *scintilla* of evidence is not sufficient." Per FOSTER, J., in *Wormell* v. *Maine Cent. R. R. Co.* 79 Maine, 397; *O'Connor* v. *Adams,* 120 Mass. 431; *Coombs* v. *New Bedford Cordage Co.* 102 *Id.* 600. Duty to instruct plaintiff: *Sullivan* v. *India Mfg. Co.* 113 Mass. 399. Cannot escape by delegating this duty to a servant. Whar. Neg. § 859. Plaintiff inexperienced and could not appreciate the danger. Nothing said to him about the necessity and difficulty of clearing out the shute or sawdust spout, or danger attending the doing it. Defendant's machinery defective; dangerous in construction, saw was improperly exposed and sawdust shute improperly made.

*D. F. Davis and C. A. Bailey*, for defendant.

Defendant having introduced no evidence, the question, the facts being undisputed, is one of law, for the Court. *Grows* v. *M. C. R. R. Co.* 67 Maine, 100; *Burns* v. *B. & L. R. R.* 101 Mass. 50. There was no danger known by the defendant that was not equally well known by the plaintiff. *Wheeler* v. *Wason Mfg. Co.* 135 Mass. 294. Plaintiff must show an omission to inform him of something which he needed to know in order to be safe. *Ciriack* v. *Merchants' Woolen Co.* 146 Mass. 190.

VIRGIN, J. The gravamen of the plaintiff's complaint in his amended count is that he lost his hand while running the defendant's lath machine, on account of his inexperience and the defendant's omission to give him such information and instruction as were reasonably necessary and sufficient to enable him to appreciate the perils to which he would be exposed by using the faulty machinery in the course of his employment, and, with reasonable care on his part, to safely perform his work.

The plaintiff engaged to perform carpenter work upon the defendant's boarding house, already erected but unfinished, to commence as soon as the weather would permit. He had never run a circular saw or other machinery, but had tailed at a rotary three days. Being short of hands in his mill, the defendant, while waiting for the weather to moderate so that work could be resumed upon his boarding house, requested the plaintiff to work his lath machine which required two persons. After being shown for fifteen to thirty minutes how to work it, the plaintiff, on March 27, was put in charge of his new employment with another employe to do the tailing.

From two to six times a day, the sawdust, accumulating at the bottom of the spout in the edge of the water under the mill or sticking in the angle of the spout a short distance below the floor, filled it up; when it became necessary to clean it out by one going down and removing the obstructing accumulation at the lower end and the other pushing the sawdust down the spout with a stick.

While being instructed in sawing, the spout did not happen to become clogged, and the plaintiff received no instruction as to the mode of clearing it.

During the first day or two, whenever the spout became choked, he stopped the saw and removed the sawdust in the manner described, which required some fifteen minutes.

On April 9, after having prosecuted his work ten or eleven days without stopping the saw and while pushing the sawdust down the spout with a stick some two feet in length, his hand which held the stick came in contact with the lower edge of the revolving saw under the saw-bench which was about twenty-two inches above the mouth. of the spout in the floor, and was so· severely lacerated as to necessitate amputation at the wrist.

This is not the case of an experienced workman set to operating machinery dangerous and demanding care which, nevertheless, he fully understands and voluntarily assumes the risk incident thereto. The usual danger of contact with such a dangerous implement as a circular saw in rapid motion is obvious to the eyes of all who have reached the years of discretion, when it is in plain sight. But the plaintiff's injury was not caused by the revolving saw above the bench, but by the two or three inches of it which protruded through and underneath it and which was less than two feet from the floor and so hidden from view by the length of the bench and the upper horizontal strip three or four inches wide which secured in place the legs of the bench, as not to be visible to the workman's eyes unless they were within eighteen or nineteen inches of the floor.

The inexperienced servant does not assume the risk of perils which he knows not of, and which are not called to his attention; but of such only as he knows, or by the exercise of ordinary care, ought to know. *Hull* v. *Hall*, 78 Maine, 114.

We cannot decide, as matter of law, that the machinery under that saw-bench which the plaintiff was obliged to use in the course of his employment, was in such a condition that a jury would not be authorized to find it unsafe and improper for a new beginner to be put to work upon without proper notice and reasonable instructions relating thereto.

Nor can we say, as matter of law, that a jury would not be warranted by the evidence in finding that contributory negligence was not imputable to the plaintiff. It would be absurd to suppose that the plaintiff recklessly destroyed his right hand. There is

evidence that would warrant the finding that, if the spout had been constructed in accordance with the suggestion of the witness who had built forty mills besides this one,—though he did not complete this; or if the machine had been boarded up as he suggested; or if instead of either, a guard had extended down from the under side of the bench on each side of the saw,— then this injury could not have happened. Nor in all probability would it have occurred, if the defendant had not omitted to inform the plaintiff of that which he needed to know in order to be safe (*Sullivan* v. *India Manf. Co.* 113 Mass. 396) and had notified him of the danger to be incurred so frequently each day, in undertaking to aid a defective spout in carrying away the sawdust which it would do without assistance if properly constructed.

The mere fact that the plaintiff shut down the saw the first two or three times does not conclusively prove that he appreciated the peril of not doing so. Numerous explanations suggest themselves when taken in connection with the time required to stop, and set in motion again the saw. And even if he did know the danger, such knowledge would not, as a matter of law, impute contributory negligence to him such as would forbid the finding to the contrary; for it would be mere evidence of such negligence to be considered along with the other facts and circumstances in the case. *Kane* v. *Northern Centr. R. R. Co.* 128 U. S. 91. *Guthrie* v. *Me. Centr. R. R. Co*, 81 Maine, 572.

Moreover, without expressing our own opinion as to what the verdict should be, the fact that fair-minded men,— as seen by the want of unanimity on the part of this court,— might reasonably reach different conclusions upon the issues whether the injury was caused by the contributory negligence of the plaintiff, or by the negligent omission of the defendant to inform and reasonably instruct the plaintiff as to the peril to which he might be exposed in attempting to clear the defective spout without stopping the saw; we think that it was a question which under proper instructions should be submitted to the jury. *Nugent* v. *B. C. & M. R. R. Co.* 80 Maine, 70.

Case to stand for trial.

PETERS, C. J., LIBBEY, FOSTER, HASKELL and WHITEHOUSE, JJ., concurred.

Dissenting opinion by

EMERY, J. Mr. Justice WALTON and myself are unable to concur in the opinion prepared by Mr. Justice VIRGIN, as it seems to us to conflict with legal principles well established by repeated decisions of this Court. The importance of these principles to the industries of this State impels us to express our dissent.

We think the plaintiff's evidence clearly discloses two insuperable bars to the prosecution of his suit.

1. His own inattention, or want of ordinary care,— his neglect to take proper and available precautions against the danger,— contributed in causing the injury. *Buzzell* v. *Laconia Co.* 48 Maine, 113 ; *Shanny* v. *Androscoggin Mills*, 66 Maine, 420 ; *State* v. *Maine Central R. R. Co.* 76 Maine, 357 ; *Lesan* v. *Same*, 77 Maine, 85 ; *Wormell* v. *Same*, 79 Maine, 397 ; *State* v. *Same*, 81 Maine, 84.

2. The danger of injury was known to him, or would have been known to him, had he made proper use of the senses, intelligence and understanding he possessed. In either case the risk fell upon him. He had the choice whether or not to encounter the danger. *Beaulieu* v. *Portland Co.* 48 Maine, 291 ; *Osborne* v. *Knox & Lincoln R. R. Co.* 68 Maine, 49 ; *Coolbroth* v. *M. C. R. R. Co.* 77 Maine, 165 ; *Wormell* v. *Same*, 79 Maine, 397 ; *Judkins* v. *Same*, 80 Maine, 417.

Conceding, as stated in the majority opinion, that the defendant might have constructed his lath machine and its appurtenances so that the sawdust would not clog and pile up,— and might have so enclosed the saw that an employe could not come in contact with its under edge ; yet under our law, as declared in the cases above cited, the owner or manager of a business plant affording employment to labor, properly if not necessarily, enjoys some liberty of judgment in constructing his mill, machinery and appliances, and in managing his business. He must not construct nor leave any pitfalls or mantraps. He must not make nor tolerate a semblance of security where there is really danger. Still he is not required to anticipate or provide against the heedlessness of others. No one can successfully do that, for no one can foresee what the heedless may do.

As was said in *Wormell* v. *Maine Cent. R. R. Co.*, *supra*, the employer is not bound to furnish the safest machinery, instrumentalities or appliances with which to carry on his business, nor to provide the best methods for their operation in order to save himself from responsibility resulting from their use. If they are of an ordinary character, and such as can with reasonable care be used without danger, except such as may be reasonably incident to the business, it is all that the law requires. Every employer has the right to judge for himself in what manner he will carry on his business as between himself and his employes, and each of these having knowledge of the circumstances must judge for himself, whether he will enter the service, or, having entered, will remain. In this case, the lath machine and all its appurtenances appear to have been substantial and solid. Nothing broke or gave way. The saw remained in its proper place. The dust spout may not have been convenient in form, or location, but it was not structurally weak, nor in any way dangerous.

The majority opinion, however, holds that the defendant may be in fault in not giving the plaintiff such information and instruction as was reasonably necessary to enable him to appreciate the perils to which he would be exposed in the course of his employment, and to enable him, with proper care on his part, to safely do his own work. The only omission that can be material in this case, was the omission to give the plaintiff information of the danger attending his reaching his hand with a stick under the saw table under the whirling saw,— and to instruct him to stop the saw before undertaking to push down the sawdust.

Conceding that the employer should inform a new employe of such dangers of the employment as are not apparent, and should give him sufficient instruction to enable him to avoid the danger,— it is also a reasonable and well-established principle, that the employer may assume that his new employe is not a senseless, mindless machine, but that he possesses and will use for the benefit of his employer as well as of himself, the ordinary senses, intelligence and understanding of one of his age, unless

indeed some lack of these is apparent, which however is not claimed here. The employer need not inform his new employe of what he must know if he uses his eyes or his reason. The employe has duties as well as the employer. By undertaking any service, as running a lath machine, he engages that he has sufficient intelligence and capacity for that service. He engages to give not only his time, but his attention to the work,— to acquaint himself so far as he can, with the proper and safe modes of doing it. He is also bound to be watchful of his own health and safety. He cannot place these duties wholly upon his employer. He is bound to use his own senses, intelligence and understanding in providing for his own safety, as much as in any part of his employer's service. Wherever placed and at whatever work, he must be ordinarily observant and mindful of possible or probable attending perils. He must not assume the service to be without danger merely because of an omission to tell him of danger. He must of his own volition look for such dangers as are open to observation, and must apprehend such invisible dangers as are likely to attend known conditions and circumstances. When danger is seen, or is suggested by the known conditions and circumstances, he should not wait for directions, but himself should seek the best safe-guards, and use the best precautions. He should affirmatively use his own faculties to discern danger, and protect himself from it. He must not be indolent, nor thoughtless. He must think as well as act. In fine, the law holds, and the employe should remember, that he is a man, not a machine,— that he is a free man, bound to use his own faculties for his own preservation, and not a slave to rest slothfully under the care of a master.

These principles are so fully and clearly stated in *Wormell* v. *Maine Central R. R. Co.*, *supra*, and the cases there cited, that further citation of authority in their support is unnecessary.

Now to apply these various principles to the evidence in this case, let us review the situation, and in doing so, we may need to state some evidence not noticed in the majority opinion. The plaintiff was a young man twenty-three years old, of somewhat varied experience as an employe, and, from general observation,

somewhat familiar with saw mills and circular saw machinery. He had worked in a shingle mill, bunching shingles and occasionally running a bolt through the saw. He had noticed lath machines, and testified that he had a general notion of how they worked. There is no suggestion of any infirmity of any sense, nor of any lack of intelligence or understanding. After working some three or four days in tailing after the rotary in the defendant's mill, he was asked to take charge of the lath machine, a machine not at all complex, and of which he had a general notion, as he told the foreman. After receiving instruction for some thirty minutes in its practical operation, he undertook to run the machine with a helper. After sawing for some time, he found that the sawdust piled up so under the saw-table as to be likely to hinder the work. He undertook to remove this accumulation without asking for directions. He first very properly stopped the saw, which projected a few inches below the lower surface of the saw-table. Then one of the pair went below to clear away obstructions at the out-flow, while the other remained above, and assisted by pushing down with a stick through the opening in the floor under the saw. This operation was repeated several times, the same precautions being taken. With the saw at rest there is no suggestion of any danger attending it.

After the first few times, however, the plaintiff omitted to stop the saw, and the succeeding clearings of the sawdust were made while the saw was in rapid motion. After some ten days in all of work at this machine, on one occasion (the time of the accident) the sawdust piled up, and the plaintiff, sending his helper below, undertook himself to reach under the whirling saw, which was revolving within two feet of and over the opening in the floor, and undertook to push the sawdust down through the opening with a stick held in his hand. He did not bend, or crouch down to look under the table, but worked with the saw and his hand hid from sight. The upper end of the stick struck the saw, the rapid motion of which caught up the plaintiff's hand against its teeth, — whence the injury.

It is true he was not told of the danger of such an operation

with the saw left in motion. It is true he was not instructed how to avoid the danger as by first stopping the saw. It may be conceded that the defendant might have so constructed his dust spout, as to avoid any accumulations of sawdust. It is also true, that this act of the plaintiff with the saw in motion, was attended with great and certain danger. But as between employer and employe it is a well-settled and undisputed principle in our law, under the decisions cited, that all these omissions on the part of the employer, will not give the employe a cause of action, if it appear that the latter actually knew the danger, or that he might have known it, by the ordinary exercise of his senses and faculties. In such case, if he remains in the service he accepts the peril.

It seems to us that the plaintiff's evidence proves both of these alternative propositions so unmistakably and conclusively, that no verdict in his favor ought to stand. Coupled with his previous general knowledge, his ten days of running a machine, so simple as a lath saw, must have made him familiar with its construction and operation. He stated in his testimony the diameter of the saw, and he must have known the thickness of the saw table. He had constructed models of them from memory. He must have known that a saw of that diameter would project through and below a table of that thickness. That he appreciated the danger, at first, seems undeniable, for he then stopped the saw before putting his hand under the table. He was not told to do so, and we can imagine no other reason for his doing so, than an apprehension of danger if it were left running. But all possible doubts of his knowledge of the danger, should be put at rest by his own declaration in his testimony, "I knew the saw was above my hand." The danger then was known and visible,— visible to the mind's eye,— the understanding, if not to the bodily sense.

This danger might have been easily avoided. The plaintiff need only have continued to observe the precautions he observed at first. His omission to do so seems to us unaccountable upon any other ground than heedlessness. The evidence discloses no other reason, and we do not see what other reason can be

even imagined. There was no change in the conditions. He had no precept or example to do so. No other machine, or employe was hindered, or embarrassed by the stoppage of the lath saw. The saw itself was running idly the while.

If it be urged, as an excuse, that he forgot, or did not think of the danger, that he was thinking about the sawdust, &c., the answer is, that it was his duty to think and remember,—his duty to his employer as well as to himself. Forgetfulness, thoughtlessness, however common are no legal excuses. The law requires prudence and care, even though most men may be imprudent and careless. Men in all walks in life are necessarily left by the law to suffer for their want of thought and care. No one is allowed to recover of another for injuries which he might himself have avoided by ordinary care.

Whatever the omissions of the defendant, the plaintiff must prove affirmatively that he was ordinarily careful, and was honestly and excusably ignorant of the danger. We think the plaintiff's evidence is irresistibly against him on both these points. It shows clearly that he knowingly, needlessly and carelessly put his hand in dangerous proximity to a circular saw in rapid motion. It also shows as clearly, that he must have known the danger, and that he chose to risk it, rather than take the trouble to avoid it. We think the court could and should say, as matter of law, that such facts appearing in his own evidence, effectually and doubly bar the plaintiff's suit.

WALTON, J., concurred.