## Fisher *v.* Delaware & Hudson Canal Co., Appellant.

*Negligence—Master and servant—Infants—Warning and instruction as to dangers of employment—Railroad.*

It is the duty of employers of infants to take notice of their age and ability, and to use ordinary care to protect them from risks which they cannot properly appreciate, and to which in the course of their employment they should not be exposed.

Plaintiff, a boy under thirteen years of age, was employed by defendant in picking slate from the top of loaded coal cars. Defendant and another railroad company loaded their coal into separate cars at certain schutes. From four to six hundred cars daily were run by gravity to the scales, a short distance below the schutes, and after being weighed were dropped

down the track to a point where they were made up into trains. On the way down it was necessary to separate the cars loaded for defendant from those of the other company. As the cars were thus being moved and made into separate trains, plaintiff and other boys, employed by defendant, were engaged on the top of the loaded cars picking out the slate. While plaintiff was thus at work on the second car from the rear one of a section, another car came down the track, struck the cars in front, and suddenly drove them forward. When the collision occurred, plaintiff was in a stooping position, and, losing his balance, fell between the cars and was injured. The testimony as to whether plaintiff had been informed of the dangers incident to the employment, was conflicting. Several witnesses testified that the occupation was an exceedingly dangerous one for a boy of plaintiff's age. *Held*, that the case was a proper one for the jury.

Argued Feb. 23, 1893. Appeal, No. 712, Jan. T., 1893, by defendants, from judgment of C. P. Wayne Co., May T., 1891, No. 115, on verdict for plaintiff, John Fisher. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ.

Trespass for personal injuries.

The facts appear by the opinion of the Supreme Court.

The court, SEELY, P. J., after charging that it was not negligence to employ plaintiff under the circumstances of the case, continued: " There is another duty which the employer owes to a child or infant, and that is to inform the infant of the dangers connected with the services in which he is employed. If that information, taken in connection with what the employee must know from his personal and constant observation, is sufficient to enable him to understand clearly the dangers to which he is exposed, then that duty is discharged on the part of the employer. The testimony here is, on the part of Mr. Beard, that he warned these boys over and over again ; my recollection is that he says almost every hour, but perhaps that is not correct. You will remember what it is. That he told them to be on their guard when they were running down cars, and to be also on their guard against the jerking of the cars when they were starting the train. Was this warning given as testified to by him ? And in connection with the observation of these boys as to the running of these cars, was that all that was necessary to enable this boy to understand the danger of his situation ? The danger here was what we should ordinarily say was a manifest danger. The cars were constantly coming down and there was a constant reminder of the occasion of the

danger.   The question is, was this warning given, and was it sufficient under the circumstances to enable this boy to understand what his danger was, and guard against it?   He testifies himself that Mr. Beard from time to time would speak of some particular car and warn him against it, and according to his testimony this was the only warning given to him.   Was that the warning simply, that Mr. Beard, when he saw a car coming with unusual speed, would call his attention to it?   The question is not what warning was given to other boys, but what warning was given to the plaintiff, and that is to be determined from the evidence in the case.   You have the evidence of Mr. Beard, the evidence of Mr. Fitch, the evidence of Mr. Stevens; and you may take into consideration, in connection with the testimony of these witnesses, the evidence of these boys who were there picking slate, so far as it contradicts the testimony of Mr. Stevens and Mr. Fitch.

" We think that we cannot say to you as a matter of law that this plaintiff cannot recover.   We think the evidence with regard to this warning is of such a character that it would be necessary to leave it to you to determine whether he was sufficiently warned of the danger of the employment in which he was engaged."

Verdict and judgment for plaintiff for $5,000.   Defendant appealed.

*Errors assigned* were (1, 2) instructions, recited in opinion of Supreme Court, quoting them.

*H. Wilson,* for appellants.—No negligence can be imputed to defendants under the evidence: Brewer v. Scott, 4 Penny. 482; O'Keefe v. Thorn, 2 Mona. 73; Kehler v. Schwenk, 144 Pa. 348; Sanford v. R. R., 136 Pa. 84; Nagle v. R. R., 88 Pa. 35; Honor v. Albrighton, 93 Pa. 475; Sullivan v. India Mfg. Co., 113 Mass. 396.

*Geo. S. Purdy, A. T. Searle* with him, for appellee.—It is the duty of a railway to its minor servants to exercise a reasonable care for their safety and not to place them in positions of danger unsuited to their years and capacity: Patterson, Ry. Ac. Law, 338; Coombs v. N. B. Cordage Co., 102 Mass. 572 Pa. Co. v. Long, 15 A. & E. R. R. Cas. 345; Strawbridge v.

Bradford, 128 Pa. 200 ; Rummell v. Dilworth, 131 Pa. 509 ; Kehler v. Schwenk, 151 Pa. 505.

OPINION BY MR. CHIEF JUSTICE STERRETT, March 6, 1893:

In view of the testimony, this was necessarily a case for the jury. It involved controlling questions of fact which were clearly for their exclusive consideration and determination.

In March 1883, the plaintiff, then a lad under thirteen years of age, was badly injured while employed by defendant company in picking slate from the top of loaded coal cars. At that time, defendant and the New York, Lake Erie and Western Railway Co. loaded their coal into separate cars, owned by the latter company, at a collection of schutes known as the " Erie pockets. " From four to six hundred cars, daily, were run by gravity to the scale, a short distance below said " pockets "; and, after being weighed, were dropped down the track to a point where they were made up into trains for transportation to market. On the way down, it was necessary to separate the cars loaded for defendant from those of the other company. As the cars were being thus moved and made up into separate trains, the plaintiff and other boys, employed by defendant company, were engaged on the top of the loaded cars picking out the slate. While plaintiff was thus at work, in company with an older lad, on the second car from the rear of one of the sections, another car came down the track, struck the cars in front and suddenly drove them forward. When the collision occurred, the boys were in the stooping position required by their work, and plaintiff, losing his balance, caught hold of his companion, but, being unable to retain his position, fell between the cars and sustained the injuries for which, on attaining his majority, he brought this suit.

It was claimed that said injuries were the result of defendant company's negligence, in these particulars : 1st. In placing him in a position so hazardous; 2. In not cautioning him or explaining to him the dangers incident to his employment, and, 3. In not providing men or means to control the cars in their descent from the schutes to the point where the trains were made up.

As remarked by the learned trial judge, there was no question of contributory negligence in the case. The only questions

were the duty which the defendant company, in the circumstances, owed to the plaintiff, and whether it neglected to perform that duty, to his personal injury and damage, etc.

It is not our purpose to either review or summarize the testimony bearing on these questions. It is sufficient to say that it tended to sustain the allegations of negligence. As described by some of the witnesses, the employment was a very dangerous one for boys of plaintiff's age, and was so known to be to his employer. One of the witnesses, Alanson Beard, testified that shortly before plaintiff was injured, Mr. Fitch, defendant company's superintendent of the work, sent for him, "and he told me to go down and take charge of the boys that were picking slate. . . . and I told him that I didn't think it was a fit place for the boys, and he said: Never mind, you go right along." When asked if there was anything said about the age of the boys, he answered: "No. He said nothing to me, only told me to go right along." On behalf of defendant, there was testimony tending to show that the boys were informed as to the danger incident to their employment and cautioned to be careful, etc.; but, to some extent at least, that was denied. While, as is usual in such cases, there was some conflicting as well as rebutting testimony, the evidence was clearly sufficient to carry the case to the jury on the questions of fact contended for by plaintiff. It was fairly submitted, in a clear and adequate charge, in which there appears to be no error of which the defendant can justly complain. The verdict, in plaintiff's favor, necessarily implies that the jury was satisfied that defendant company's negligence was the proximate cause of plaintiff's injury.

The assignments of error are two in number. One of these is the refusal to charge as requested in defendant's first point, viz.: " The evidence fails to show any negligence on the part of the defendants, and therefore the plaintiff cannot recover."

For reasons already suggested, this point was rightly refused. It would have been grave error to have done otherwise.

The other is the refusal to charge as requested in defendant's second point, viz.: " Under all the evidence the verdict must be for the defendant."

For same reasons, there was no error in refusing this point. It could not have been affirmed without wholly ignoring the evidence tending to prove that the defendant company was

negligent in the performance of the duty which, in the circumstances disclosed by the testimony, it owed to the plaintiff. As to the duty referred to, the instructions of the learned judge were full and adequate. Among other things, he said, in his general charge : " There is another duty which the employer owes to a child or infant, and that is to inform him of the dangers connected with the services in which he is employed. If that information, taken in connection with what the employee must know from his personal and constant observation, is sufficient to enable him to understand clearly the dangers to which he is exposed, then that duty is discharged on the part of the employer." After referring to the evidence, as to the warning alleged to have been given to plaintiff by defendant company, the learned judge said to the jury it was " of such a character that it would be necessary to leave it to you to determine whether he was sufficiently warned of the danger of the employment in which he was engaged." Again, in affirming plaintiff's second point,—requesting him to charge, " It is negligence, for which the employer is responsible, to employ and place in a hazardous position a boy whose appearance indicates that he lacks the intelligence, prudence and foresight which will enable him to comprehend the dangers of his employment,"—he said, if the circumstances are such that the employer must perceive that the boy has not the capacity to realize the dangers to which he is exposed, he ought not to be put in that employment." These instructions, except so far as they may be involved in the refusal to affirm the general propositions submitted by defendant, are not complained of. They are in harmony with our cases, including Strawbridge v. Bradford, 128 Pa. 200; Rummell v. Dilworth, 131 Pa. 509; Zurn v. Tetlow, 134 Pa. 213; Ross v. Walker, 139 Pa. 42; Kehler v. Schwenk, 151 Pa. 505. In Rummell v. Dilworth it was held that in the case of young employees, it is the duty of employers to take notice of their age and ability, and to use ordinary care to protect them from risks which they cannot properly appreciate, and to which in the course of their emyloyment they should not be exposed. This principle is quoted with approbation by our Brother GREEN in Kehler v. Schwenk, supra.

. Guided by the instructions that were properly given as to the law, applicable to the facts which the evidence tended to

prove, it was the special province of the jury to ascertain the facts, and render their verdict accordingly. There appears to be nothing in the record to indicate that this was not properly done, or that there was any error in the trial that would justify a reversal of the judgment.

Judgment affirmed.