## No. 11,974.

### CYRUS A. POWERS VS. THE CALCASIEU SUGAR COMPANY.

It is the duty of the master to keep his premises in a safe condition, so as not to endanger the life and limbs of the servant. Hence, the master will be responsible in damages for the injury to the servant, who, without knowledge or warning to guard against the accident, falls into a ditch of scalding water permitted by the master on the premises, the servant's duties requiring him to approach or pass the ditch, left uncovered, with no railing or other means provided to guard against accidents. Wharton on Negligence, Secs. 206, 208, 211, 212; 17 Wallace, 553; 100 U. S. 215.

Such a risk is not incident to the servant's duties, and, unless he had knowledge of the danger and assumed the risk or by his own negligence fell into the ditch, his action against the master for the damages will not be affected. *Ibid.*.

Nor in such case will the master's responsibility be affected by the fact that when the accident occurs the servant is not in the actual employ of the master, but is being conducted by the master's manager to that portion of the premises where the danger exists and the master proposes to employ the injured party.

APPEAL from the Twelfth Judicial District Court for the Parish of Calcasieu. *Fournet, J.*

*O'Bryan & Fournet* for Plaintiff, Appellee.

*Arsène P. Pujo* for Defendant, Appellant.

Argued and submitted February 11, 1896.
Opinion handed down February 24, 1896.

The opinion of the court was delivered by

MILLER, J. The plaintiff sues the Calcasieu Sugar Company for damages, caused by his falling in a drain on the company's premises partially filled with scalding water. The drain was for carrying the waste water from the boilers of the company's sugar mill, was left uncovered, and plaintiff, an employee of the company called on to work on the drain, but unaware, as he claims, of its location, or of the danger from the hot water, accidentally stepped into it, the accident occurring while plaintiff was being shown by the company's manager the work to be done. The answer is that the plaintiff's injuries were due to his carelessness in stepping into the drain. The verdict of the jury and judgment thereon was in favor of plaintiff for three thousand dollars, and defendant appeals.

The plaintiff is a cooper, had been employed in the cooper shop on the company's premises and is an old man. On the night of the accident he asked the manager for work, was told help was needed outside the mill to clean up, as he understood, or as the witness for the defendant expresses it, to clean the bagasse ditch, and thereupon the manager proposed to show the plaintiff the work expected from him. The manager led the way, going toward a passage over the ditch or drain to receive the waste water from the boilers or double effect or vacuum pan. The ditch led outside the sugar house, was uncovered for a space of nine feet, and contained the hot water that scalded the plaintiff. Alongside that portion that was uncovered, there was, as we appreciate the testimony, a ledge of three feet of brickwork. The manager in advance, the plaintiff following, reached and passed the door, the exit from the passage. The

plaintiff, at or just beyond the door, fell into the ditch. His account is, he followed the manager to the outside of the mill; "there is a floor until you come near the door, there the floor is all gone," below a vacant space filled with hot water; the manager crossed on a stick, but the witness, testifying, not knowing of the stick or the ditch, he fell, threw out his hand to save himself, fell on the other arm, scalding it up to the elbow, and his leg from top to toe. The manager testifies, that passing the door to the outside he went to the end of the boilers for a rake for use in cleaning the ditch; thought plaintiff was following, looked behind, found he was not, and was told the plaintiff had fallen in the ditch, and assisted in his extrication. There is testimony the ditch did not on the outside come up close to the door, but that there was the ledge of brickwork, the ditch being, we infer, on the right side of it, and it is claimed on this brickwork the defendant could have stood or walked. It is claimed the plaintiff was familiar with the locality; there is testimony that in leaving his work at the cooper shop to get water to drink or procure wood, he went to that part of the premises, and that he had crossed the ditch. It is further shown there were lights in the passage, by which it is claimed the ditch could have been perceived, and the manager testifies, before reaching the door he warned plaintiff of the ditch. The plaintiff testifies he had no knowledge of the ditch or hot water, that the lights were of no aid; that he had no warning, and it is in proof that the point of the alleged warning was twenty feet from the place of the accident.

It is well settled the employer is bound to protect his servant against unusual risks or dangers *i. e.* other than those naturally incident to the servant's duties. This obligation extends to the premises of the employer, and requires that they be kept in a condition not to menace life or limb of the servant. Wharton on Negligence, Secs. 199, 210, 211, 212; Railroad Company vs. Fort, 17 Wallace, 553; Hough vs. Railway Company, 100 U. S. 215. An open ditch of scalding water, with no railing or provision of any kind to guard against accidents, is certainly a menace to the servant called in the course of his duty to the locality, and required to walk near the ditch. A slight deviation in stepping might cost life or cause the most serious injury to the servant. Unless there are circumstances placing on the servant the risks of falling into scalding water while performing his

duties, or he is chargeable with negligence, in our view, the responsibility for such accident should be on the employer.

There is testimony that this ditch, intended to carry the waste water from the boilers and apt to be choked with bagasse chips, was necessarily left open when reqnired to be cleaned. But that would not excuse the employer from all precautions to prevent employees falling in, when no necessity for cleaning existed or when required to be uncovered. Again, there is testimony that, serving for cold as well as hot water drainage, the temperature of the water, except for a brief period, could not be hot enough to do any damage. The fact itself, the plaintiff was badly scalded, answers this contention.

The argument to sustain the negligence attributed to the plaintiff assumes he knew the ditch, received warning and that there were lights. The insistence of plaintiff's knowledge of the danger would have its force with reference to a servant whose functions were performed at the ditch and knew its uses. The plaintiff worked at the cooper shop away from the sugar house. With all due weight to the testimony that occasionally he passed in the neighborhood of the ditch to get drinking water or wood, and had stepped across it, we do not feel authorized to attribute to him knowledge of the ditch with its water, and the peril of a step from the narrow path on which the manager was leading to show plaintiff the way to where the cleaning was required. The testimony of the plaintiff that he was not familiar with the locality or surroundings, impresses us as truthful. The lights were in the passage at some distance from the point he fell. Unless he had some special reason to suspect a ditch of scalding water to open at any moment at his feet, especially as he was following his guide, the lights he had passed when his mishap occurred exert, in our view, no appreciable influence in the controversy. It is our conclusion the accident occurred at the door of the passage or after the plaintiff had passed it. As he had to encounter the ditch beyond and within three feet of the door, an admonition at that point of his danger would have been serviceable. There was none. The manager emerging from the door turned to his left in search of a rake, leaving the plaintiff unwarned to stumble into the ditch on his right. The warning, such as it was, implies the manager knew plaintiff was ignorant of the locality. The manager states he told plaintiff to be careful, there was a ditch alongside and the floor was uneven. In other portions of the

testimony the warning is stated simply to be careful, addressed to plaintiff. It is suggested by the testimony that this admonition was in a low tone of voice, and the plaintiff testifies he heard nothing of the kind. Be that as it may, the suggestion of a ditch and an uneven floor can hardly be deemed an adequate premonition against the plunge into hot water that was the menace at or just beyond the door, more than twenty feet from where the alleged warning is claimed to have been given. If an admonition of danger is relied on, it must be timely and explicit. We are of opinion that caution urged in this case was utterly insufficient, even if heard.

We have given attention to the insistence that when the accident occurred there was no contract relation between plaintiff and defendant. He was being shown the work to be done, hence it is urged he was entitled to no protection against the danger he encountered. He was in charge of defendant's manager at the time to be shown the work he was to perform. It seems to us he was within the shelter of the responsibility of the master or proprietor to those lawfully on his premises in his service. If not actually in that service, the plaintiff at the time of the accident, was, on the invitation of the master, being conducted to that portion of the premises where it was proposed to employ him.

The case is, we think, with the plaintiff on the issue of responsibility. The injuries sustained by plaintiff were due to the dangerous exposed ditch of hot water on the defendant's premises, well calculated to injure employees or others called to that locality. We find no basis for the contributory neglect attributed to plaintiff, an old man called by defendant's agent to work in a dangerous locality on the premises, with no knowledge on his part or precautions of the defendant, enabling plaintiff to foresee and guard against the serious peril in which he became involved to his serious injury.

The jury gave three thousand dollars damages. As a cooper the plaintiff was earning one dollar and fifty cents to two dollars per day, but was not always employed. His injuries were severe and confined him to the house for four months. He endured great pain. His bills for medical attendance, we infer, were paid by defendant. His capacity for hard work, it is testified, was diminished by the injuries to his limbs, but in appreciating that element of damage, it must be borne in mind that age brings a limit in that respect, and the plaintiff was 62. We think the verdict excessive. In our opinion two

thousand dollars will be a reasonable allowance. Money it is true is no alleviation for suffering endured, a main element in plaintiff's case. We have, in reaching our conclusion, allowed for the pain to which plaintiff was subjected and other causes of damage as much as we think the circumstances warrant.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be reversed, and it is now ordered, adjudged and decreed that plaintiff do have and recover from defendant two thousand dollars, the costs of the lower court to be paid by defendant, those of the appeal by the plaintiff.