## FISHER v. PRAIRIE.

No. 425.   Opinion Filed May 10, 1910.

(109 Pac. 514.)

1. **MASTER AND SERVANT—Duty to Instruct Inexperienced Servant—Assumption of Risk.** It is the duty of a master who has actual knowledge that a servant is inexperienced in the work for which he is employed to use reasonable care in cautioning and instructing such servant in respect to the dangers he will encounter, and how best to discharge his duties, and he is not relieved from such duty by the fact that the servant solicited the

Vol. 26—22

employment and represented himself to be competent; nor does the servant by reason of such fact assume the risk from dangers of the employment of which he is ignorant, and as to which he has been given no reasonable instruction, although they are ordinary hazards of the service, unless they are so obvious that even an inexperienced man would escape them by the exercise of ordinary care.

(a) The duty of qualifying an inexperienced servant for the performance of new and dangerous duties is a personal duty of, the master, who is responsible for the proper qualifications of any persons to whom it is delegated, and for their negligence in failing to continue the instruction until it is completed.

2.    MASTER AND SERVANT—Assumption of Risk. A servant impliedly assumes the risks incident to the service he contracts to perform, and, in the absence of knowledge to the contrary, the employer may assume, as between them, that one applying for a particular employment possesses the skill and judgment requisite to the safe and proper performance of his duty; but if the employment be dangerous, as known to the master, who has also reason to know that the servant is inexperienced or without capacity, such servant, even with his own consent, cannot be required to assume the risk therefrom, unless he is cautioned and instructed sufficiently to enable him to reasonably comprehend the dangers, and to do the work safely, with proper care on his own part.

(a) A statement by one applying for work in the electrical department of an electric railway and electric light system that he had had experience in that kind of work, who was then employed only as a helper to a lineman, did not justify the foreman or master afterwards in requiring him or assigning him to do work which required experience and knowledge of an experienced electrician to do with safety to himself, without giving him proper instructions.

3.    MASTER AND SERVANT—Injury to Servant — Actions—Sufficiency of Evidence. Plaintiffs' intestate was employed as a lineman's helper in the handling of electrical appliances or wires conducting currents of an electrical railway and electric light system. At said time he had the appearance of being a common laborer, the master or foreman having knowledge that he had worked in the railroad shops as a boiler maker's helper and in a plumbing and electrical supply establishment as a plumber's helper, where occasionally he assisted the electricians in inside house wiring, his employ in that capacity not being of great hazard. After about 45 days' service as helper to the lineman, with his consent, he was assigned to the duty of troubleman, which required him to investigate all reports as to trouble in regard to the wires carrying electric currents, including those of high voltage, and edefective transformers. In order to do this

it was necessary for him to climb electric poles upon which such wires were strung, such work being extrahazardous, and, in order to be done with reasonable safety, required the skill and knowledge of a party experienced in such work. The foreman, without any specific instructions or warnings, advised him that such work was dangerous. **Held,** that, on such evidence, a motion to direct a verdict for defendant was properly overruled.

(Syllabus by the .Court.)

*Error from District Court, Pottawatomie County; W. N. Maben, Judge.*

Action by Mollie Prairie, for herself and as next friend for Olen Prairie, a minor, against J. C. Fisher, receiver of the Shawnee Light & Power Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

*Flynn & Ames* and *J. H. Maxey,* for plaintiff in error.

*F. H. Reily* and *Paul F. Cooper,* for defendant in error.—Citing: 26 Cyc. 1173, 1176, 1463, 1473; *Mo. Pac. Ry. Co. v. Watts* 64 Tex. 568; *Ryan v. L. A. Ice & Cold Storage Co.* 112 Cal. 244; *Virdelli v. Commission Co.,* 115 Cal. 517; *Myhun v. La. Electric, etc., Co.* (La.) 7 L. R. A. 172.

WILLIAMS, J. It is essential to pass on the following questions raised on this record: (1) The denial of defendant's motion for a peremptory instruction in its favor. (2) Alleged error in giving, at the instance of the plaintiff, instruction No. 1.

1. The intestate at the time he entered the employ of the defendant (plaintiff in error) had never had any experience in handling of electrical appliances or wires conducting currents of high voltage such as the wires conducting the current of the electric railway and electric light system under the management and control of the plaintiff in error. He was about 24 years of age at the time of his death in the fall of 1905. Prior to 1901 he had worked on a farm as a laborer. Soon thereafter he moved to Shawnee, and went to work in the railroad shops as a boiler maker's helper. After about two years, he began work for a plumbing and electric supply company as a plumber's helper, continuing in that capacity

for about 18 months, having had no experience with electricity prior to that employment, and during this time occasionally assisted the electricians to do inside house wiring, never having to do, however, with high currents or being exposed to any dangers of injury. From this employ he went to the plaintiff in error, where he was engaged merely as assistant to the lineman. After being in such employ for about a month and a half, he was assigned to the work of what was known as a "troubleman," and was engaged in this capacity for not over two weeks prior to his death. His duties in this position required him to go out and investigate and find out when the appliances or lines carrying currents of high voltage were out of order, and the evidence would justify the jury in finding that the master or superior intended for him at times to fix same. There was also evidence that he represented himself at the time of his initial employment to have knowledge of electricity, but at this time the master relied upon the same only enough to put him to work in the capacity of a lineman's helper and paid him only a helper's wages. At the time that the intestate answered the trouble call, meeting his death, according to the evidence of U. S. Hart, the general office man of the plaintiff in error, said intestate came in and stated "that there was some trouble with a transformer, and he called for the testing instruments, and I told him where he could find them. He also asked for a helper, and I instructed him to get any one whom he desired to assist him in the work, and I also cautioned him very particularly to take care of himself and keep clear of any danger. * * * Well, I spoke very forcibly in regard to being careful. * * *. I said to him: 'Phil, you want to be damn careful.' That was my expression. * * * Well, I had talked to Mr. Prairie times before this, not only to him, but to all the other men that were connected with the line work, and also stationary work, and cautioned them, and cautioned Mr. Prairie, not only Mr. Prairie, but Mr. Payton and others always, to be very careful, and, if it was necessary, that rather than go into a place that was dangerous that we would close the plant down any time rather than have them jeopardize their lives or attempt to do

any work that they knew to be hazardous or extrahazardous. * * * I could not recollect the exact conversation except that he was very confident that he was capable of taking care of the proposition * * *."

Frank Peyton, an electrician in the employ of the plaintiff in error, testified as follows:

"Q. Do you know what experience Prairie had in handling, repairing, and investigating transformers? A. Yes, sir; he had experience along with me while he worked there. Q. Do you know whether he fully understood them? A. Well, he understood the handling of them; that is, putting them up and disconnecting them, and fusing them, as we call it. Q. Do you know whether or not he understood all the details of a transformer? A. I don't know. * * * Q. Now, if he was sent to investigate a transformer, you don't know whether he would know or not what the matter with it was? A. He would know whether there was a fuse out. Q. Did he understand the kind of work he was doing? A. Why, I thought he did. Q. Did you ever talk to him any about the danger? A. Yes, sir. Q. What conversation did you have with him on that subject? A. I told Mr. Prairie when he first applied for a position—told him it was a very dangerous occupation, and again and again I cautioned him about being careful on the poles. Q. You say that prior to the accident that he had had previous experience with transformers? A. Yes, sir. Q. What kind of work had he done? A. Well, he had done everything, I think, everything that had been done around the plant, around the lines, made the live wire connection, cutting out the transformers, and removing them, and fused them—just general line work. Q. Was there any other work to be done on transformers that he had not had experience in? A. I don't think there was anything done but what he had had experience in and understood."

This seems to have been about all the warning that the deceased ever had from the master or any of his foremen. Other testimony went to the effect that it would take ordinarily two or three years' preparation in order for an ordinary person to prepare himself to understand so as to engage in such work with any reasonable safety. The question arises as to whether there is any evidence in this record reasonably tending to prove that the plain-

tiff in error was guilty of negligence. If so, the cause should have been submitted to the jury. See *Schoner v. Allen et al.,* 25 Okla., 22, 105 Pac. 191.

Stated in general terms, the extent of the master's obligation in regard to imparting information to or warning a servant is to give him "such instructions as will enable him to avoid injury." *Atlas Engine Works v. Randall,* 100 Ind. 293, 50 Am. Rep. 798.

If the master relies on the fact that he had admonished the servant of the danger which caused the injury, he must show that the warning was timely and explicit. *Powers v. Calcasieu Sugar Co.,* 48 La. Ann. 483, 19 South. 455.

Giving general instructions may not be sufficient. *Hickey v. Taaffe,* 105 N. Y. 26, 12 N. E. 286.

The duty, however, will be held to have been fully performed if the information which he imparted was sufficient when supplemented by the servant's own personal observation to enable him to reasonably appreciate the risks of the employment. *Fisher v. Delaware & H. Canal Co.,* 153 Pa. 379, 26 Atl. 18; *Williams v. Hensler,* 38 Ill. App. 584.

In 1 Labatt's Master & Servant (1904) § 253, at page 571, it is said:

"In numerous cases the servant has been allowed to recover for the reason that the court felt itself unable to say as a matter of law that the master's culpability might not reasonably be inferred from evidence which indicated that the servant, although he had been warned in general terms as to the danger of the work, had received no special warning in regard to the particular danger to which the injury was due, or no explicit instruction as to the proper manner of avoiding it, and that, under the circumstances, the information which the master had thus failed to communicate was necessary to enable the servant to obtain an intelligent comprehension of the danger."

In the cases cited in support of this text, it has been held as follows:

In *Fox v. Peninsular White Lead & Color Works,* 84 Mich. 676, 48 N. W. 203, that merely to notify a servant that Paris green

is a poison is not sufficient, but that he should also be informed of the precise effects which it may produce on persons engaged in its manufacture, and also of the precautions necessary to be taken for obviating these effects; that the master, however, was not bound to inform the servant of the particular ingredients of the formula used in its manufacture.

In *Louisville & N. R. Co. v. Hall,* 87 Ala. 708, 6 South. 277, 4 L. R. A. 710, 13 Am. St. Rep. 84, that a brakeman placed on a freight train on a road with which he is not familiar must be given such notice of the danger of low highway bridges over the road as to enable him by reasonable attention and diligence to learn where the points of danger are and avoid them.

In *McQuillan v. Willimantic Elec. Light Co.,* 70 Conn. 715, 40 Atl. 928, the servant did not receive any express instruction that it was unsafe to support himself while at work upon the electric light pole by throwing his leg over one of the cross-arms. The evidence presented by the company showed that the employee who in its behalf instructed the servant how to perform his duties did not assume the position that the servant did at the time of his injury; that, if the defendant knew that it was dangerous for a servant to so support himself while performing such work, he should have so informed him unless the danger was obvious.

In *Sullivan v. India Mfg. Co.,* 113 Mass. 396, that though dangers of a particular position for, or mode of doing work, being great, and apparent to persons of capacity, and knowledge of the subject, yet a party from inexperience may fail to appreciate same, and it was negligence to expose a servant of this character, even with his own consent, to such dangers, unless with instructions or cautions sufficient to enable him to comprehend them.

In *McGowan v. La Plata Mining & Smelting Co.,* (C. C.) 3 McCrary, 393, 9 Fed. 861, Hallett, District Judge, said:

"And in this case the jury was told that the plaintiff could not have recovered for a burn caused by spilling the slag on himself. But the explosive power of hot slag when cast into water is not within the intelligence of ordinary men. It is doubtful whether

many people of education know the force and violence of such an explosion; and, if fully informed, how many of them, when put to service at a smelting furnace, would recall their learning without a suggestion from some source. What the law will presume as to the knowledge of men in matters of this kind may in some instances be a question of difficulty, and certainly it will not be easy to lay down a general rule on the subject. In the face of the plaintiff's testimony, however, to the effect that he had no knowledge or information of the danger to which he was exposed, it would be manifestly unjust in this instance to hold as matter of law that he had notice of it. After all, it is not so much a question whether the party injured has knowledge of all the facts in his situation, but whether he is aware of the danger that threatens him. What avails it to him that all the facts are known, if he cannot make the deduction that peril arises from the relation of the facts? The peril may be a fact in itself of which he should be informed."

In *Coombs v. New Bedford Cordage Co.,* 102 Mass. 572, 3 Am. Rep. 506, the court said:

"Upon the new trial of the case at bar, the jury should be instructed that the defendants had the legal right to run their machinery without fencing or boxing it, unless by so doing they exposed persons in their employment, or other persons who come upon their premises by their procurement or invitation, to danger of which they gave no sufficient notice; that if, by the fact the cogs were in sight, and the danger from them apparent, the jury should be satisfied that the plaintiff had reasonable notice of the peril to which he was exposed, and, understanding it, chose to undertake the employment which exposed him to it, he cannot recover; but that, if, on the other hand, they should be satisfied that the defendant knew, or had reason to know, the peril to which he would be exposed, and did not give him any sufficient or reasonable notice of it, and if he, without any negligence on his own part, from inexperience or reliance upon the directions given him, failed to perceive or appreciate the risk, and was injured in consequence, they would be responsible to him in this action."

In *O'Connor v. Adams,* 120 Mass. 427, in an opinion by Mr. Justice Endicott, the court said:

"Upon a careful examination of the report, the court is of opinion that there was evidence tending to show that the defend-

ants' agents put the plaintiff in a place of peculiar danger, of which
he had no knowledge or experience, without informing him of the
risks, or instructing him how to avoid them.    That question was
proper to be submitted to the jury, together with the question
whether the plaintiff was in the exercise of due care at the time."

In *McDonald v. C., St. P. M. & O. Ry. Co.*, 41 Minn. 439, 43
N. W. 380, 16 Am. St. Rep. 711, the court said:

"The situation or circumstances may be such that, while the
character of machinery and its mode of operation may be suffici-
ently obvious to the senses, yet the risks attending its use may not
be appreciated or understood by the employee without proper ex-
planation or warning.    It is the duty of the servant to use rea-
sonable care to inform himself in respect to the hazards to which
he may be exposed, but, unless the risks are patent, he is not under
the same obligation to know the nature and extent thereof as is the
master.    *Russell v. Railroad Co.*, 32 Minn. 234, 20 N. W. 147;
*Wuotilla v. Lumber Co.*, 37 Minn. 155, 33 N. W. 551 [5 Am. St.
Rep. 832].    We are of the opinion that upon the evidence, some of
which is referred to above, the court was not warranted in con-
clusively presuming that the plaintiff knew or was bound to know
the hazards of his position, or that any such accident was likely to
happen.    If the evidence in his behalf is true, it is not probable
that the danger of such an accident had ever occurred to him, and,
with his limited knowledge of the operation of technical forces, it
was perhaps not likely to be suggested to him.    But whether he
did or did not understand and appreciate the danger of working
where and in the manner he did, or, in the exercise of reasonable
care, ought to have known it, was, under the evidence in this case,
a question for the jury.    *Lake Shore, etc; Railroad Co. v. Fitz-
patrick,* 31 Ohio St. 487."

See, also, *George Matthews Co. v. Bauchard* (1897) 8 Rep.
Jud. Quebec B. R. 550; 1 Labatt's Master and Servant (1904) §
240a, at page 543; *Adams v. Grand Rapids Refrigerator Co.*
(Mich.) 125 N. W. 724; *Ramsey v. Raritan Copper Works* (N. J.)
74 Atl. 437; *Holland v. Tenn. Coal. I. & R. Co.*, 91 Ala. 444, 8
South. 524, 12 L. R. A. 232.

The extent to which the master should enter into details in
giving instruction to the servant depends upon the  apparent or
known capacity of the servant to reasonably utilize the information

which he receives for the purpose of securing his own safety. The obligation of the defendant is not discharged "by informing the servant generally that the service engaged in is dangerous, especially where the servant is a person who neither by experience nor education has, or would be likely to have, any knowledge of the perils of the business, either latent or patent, but * * * in such case the servant should be informed, not only that the service is dangerous, and of the perils of a particular place, but, where extraordinary risks are or may be encountered, if known to the master, or should be known by him, the servant should be warned of these, their character and extent, so far as possible." 1 Labatt's Master & Servant (1904) § 253, at page 575. See, also, *Smith v. Peninsular Car Works*, 60 Mich. 501, 27 N. W. 662, 1 Am. St. Rep. 542. The doctrine that a general warning may properly be found to be inadequate is not applied where the warning given was one sufficient to put the servant on inquiry and observation, and the danger and extent of the peril was one which could readily be comprehended by any one in encountering same. See *Smith v. Winona & St. P. R. Co.*, 42 Minn. 87, 43 N. W. 968.

It seems that the notice and instruction, if such is necessary at all, should be graduated to the age, intelligence, and experience of the servant. They should be such as a master of ordinary prudence and sagacity would give under like circumstances for the purpose of enabling the inexperienced person, not only to know the dangerous nature of his work, but also to understand and appreciate its risks and to avoid its dangers. They should be governed by the experience and capacity of the servant. *Bohn Mfg. Co. v. Erickson*, 5 C. C. A. 341, 12 U. S. App. 260, 55 Fed. 943.

It is not necessary that a servant should be warned of every possible manner in which injury may occur. He must examine his surroundings and take notice of obvious dangers and operations of familiar laws. *Mississippi River Logging Co. v. Schneider*, 20 C. C. A. 390, 34 U. S. App. 743, 74 Fed. 195.

An employer is required to exercise ordinary and reasonable care and see that the servant possesses a competent knowledge of

the peculiar dangers to which he is exposed in doing his work and of the precautions necessary to be taken to guard himself against those dangers, and, in the exercise of that care, the master has the right to assume that the servant brings to the work ordinary intelligence and powers of observation, and the capacity to learn something from observation and experience. Moreover, the duty to instruct against dangers, incident to the work extends only to such dangers as are known to the master himself, or which are reasonably to be apprehended from the nature of the employment. *Benfield v. Vacuum Oil Co.,* 75 Hun, 209, 27 N. Y. Supp. 16.

An employer who gives such general instructions and cautions as will reasonably enable the employee by the use of his intelligence to comprehend the dangers which threaten him in his work must be held to have discharged his duty, although he does not anticipate in advance every possible risk or accident. *Thompson v. Edward P. Allis Co.,* 89 Wis. 523, 62 N. W. 527.

The master is always warranted in acting on the presumption that the servant understands the dangers incident to normal, ordinary risks, and also that adults who hire themselves out to do a particular kind of work are supposed to understand the ordinary dangers which pertain to such work, and to accept the risks incident to the same. But a master is bound to instruct a servant as to all risks which are abnormal or extraordinary and at the same time of the kind that the servant cannot be held chargeable with an adequate comprehension of their nature and extent or of a proper means by which to safeguard himself.

As a prerequisite to a recovery by the servant, the knowledge of the master of the inexperience of the servant is an essential element. In determining this, the conditions which produce the injury and the personal characteristics of the servant are material for consideration. If the master should reasonably have perceived that the servant was incapable of understanding the perils of the situation, he should have warned him. Unless the master as a reasonable person is justified in acting under the assumption that the servant is so experienced as to appreciate the risks involved, he is

guilty of negligence unless he instructs him. Where there is evidence tending to show that the master, having knowledge of the servant's inexperience, employs him in a hazardous work which requires the exercise of peculiar skill, the failure to give him adequate instructions may be properly found to be negligence. *Reynolds v. Boston & M. R. Co.*, 64 Vt. 66, 24 Atl. 134, 33 Am. St. Rep. 908; *Louisville & N. R. Co. v. Miller*, 43 C. C. A. 436, 104 Fed. 124; *St. Louis & S. E. R. Co. v. Valirius*, 56 Ind. 511; *Illnois C. R. Co. v. Price*, 72 Miss. 862, 18 South. 415.

The representation of the servant that he has had experience in the work for which he was hired does not operate as an estoppel, but is merely a circumstance to be considered as bearing upon the question of negligence *vel non*. In 1 Labatt's Master & Servant, § 241, at page 549, it is said:

"There are manifest and cogent objections to the theory that, because the servant has made false statements which it is advantageous for the master to believe, the latter is entitled to shut his eyes deliberately to obvious facts which indicate that the former is not telling the truth. It seems impossible to argue, with any show of reason, that the master is absolved altogether, by anything which the servant may say, from the duty of using proper care; and this is virtually the effect of the decisions in which it is laid down that the inability to maintain the action is deducible as a conclusion of law whenever it appears that the servant had made express representations as to his competency. In cases where the question is whether the master should or should not have seen the necessity for instruction, the servant is supposed to be a person in complete control of his mental faculties. No duty to warn him can be predicated, when in fact he was in no danger except from unanticipated possible consequences of sudden fright."

See, also, *L. & N. R. Co. v. Miller, supra; Felton v. Girardy*, 43 C. C. A. 439, 104 Fed. 127; *Missouri P. R. Co. v. Watts*, 63 Tex. 549; *Galveston, H. & S. A. R. Co. v. Hughes*, 22 Tex. Civ. App. 134, 54 S. W. 264.

In the case at bar, the alleged representations of the deceased as to his competency were not specific. The department of electricity undoubtedly covers a wide range. The distinction between

an apprentice aiding in electrical house wiring or helping a line-
man and an experienced electrician going out in places of great
danger is very marked. But they say he was warned. Where
was he given any specific warning? He neither made any specific
representations as to his competency nor received such warning
as to points or instruments of danger so that he might avoid
same. When a person who has the appearance of a laboring man
and who has been working at raiload shops and in a plumbing es-
tablishment comes to the master, and after he has made his repre-
sentations as to experience and skill is employed and placed at a
helper's work, being paid only a helper's wages, and then, only
after 45 days' experience, where the master and his foreman have
opportunity to observe him, he is sent out on errands of danger,
still at a helper's wages, without specific instructions as to specific
points and instruments of danger, the issue of facts as to negli-
gence relating to the master's duty to warn and the sufficiency of
same should be determined by a jury.

See, also, Shearman and Redfield on Negligence (5th Ed.)
§ 219a; *Brennan v. Gordon,* 118 N. Y. 489, 23 N. E. 810, 8
L. R. A. 818, 16 Am. St. Rep. 775; *Whitelaw v. Railroad Co.,* 16
Lea (Tenn.) 391, 1 S. W. 37; *Sullivan v. Mfg. Co.,* 113 Mass.
396; *Coombs v. Cordage Co.,* 102 Mass. 572, 3 Am. Rep. 506;
*O'Connor v. Adams,* 120 Mass. 427; *Leary v. Railroad Co.,* 139
Mass. 580, 2 N. E. 115, 52 Am. Rep. 733; *Railway Co. v. Fraw-
ley,* 110 Ind. 18, 9 N. E. 594; *Reynolds v. Railroad Co.,* 64 Vt.
66, 24 Atl. 134, 33 Am. St. Rep. 908; *Railroad Co. v. Price,* 72
Miss. 862, 18 South. 415; *Hughes v. Railroad Co.,* 79 Wis. 264,
48 N. W. 259; *Jones v. Florence Min. Co.,* 66 Wis. 277, 28 N. W.
207, 57 Am. Rep. 269; *Railroad Co. v. Brick,* 83 Tex. 598, 20
S. W. 511; *Campbell v. Eveleth,* 83 Me. 50, 21 Atl. 784; *Hull
v. Hall,* 78 Me. 114, 3 Atl. 38; *Ingerman v. Moore,* 90 Cal. 419,
27 Pac. 306, 25 Am. St. Rep. 138; *Swoboda v. Ward,* 40 Mich.
420; *Dowling v. Allen,* 74 Mo. 13, 41 Am. Rep. 298; *Id.,* 102
Mo. 213, 14 S. W. 751.

2. Instruction No. 1, given at the request of the plaintiff, is in words and figures as follows:

"A master who carries on an eminently dangerous undertaking such as the generation and distribution of electricity is bound to know the character and extent of the danger, and to notify the same to the servant specially and unequivocally so as to be clearly understood by him. And you are instructed that unless you believe that the deceased was so instructed as stated above and fully understood same, it will be your duty to find defendant guilty of negligence in this respect."

It is insisted by counsel for the defendant in error that this instruction is supported by the case of *Myhan v. Louisiana Elec. Light & Power Co.*, 41 La. Ann. 964, 6 South. 799, 7 L. R. A. 172, 17 Am. St. Rep. 436. If so, it seems not to be in harmony with the great weight of the American authorities. The civil law as a rule prevails in that state. Under the civil law and systems founded thereon, "the existence of an obligation to impart information as to the proper manner of doing the work in hand, or as to the damages incident thereto, is inferred in all cases where it should have been apparent to a reasonably intelligent person that the perils to which the work subjected the servant in question were probably not appreciated by him." 2 Labatt on Master and Servant (1904) § 881, p. 2421. When this Louisiana case is carefully examined, we do not believe that it supports this instruction. In the case at bar there is neither any allegations nor any evidence offered to show that the wires were negligently strung or laid or insulated. In the former case there was a question as to whether the wires were laid the safer way, and were properly insulated. In the Myhan Case, it is said:

"The master is liable for subjecting the servant, through negligence, to greater risks than those which fairly belong to the employment, and the servant need only, in order to recover, to raise a reasonable presumption of negligence or fault on defendant's part."

In the same case, it is also said:

"A superior is presumed to know, and in law knows, that which it is his duty to know, namely, whatever may endanger the

person and life of his employee in the discharge of his duties. In such cases the superior is bound specially to warn the employee of the nature of the danger, and will not be excused, in case of injury, unless he does prove that the employee well knew of the danger, and notwithstanding exposed himself willingly and deliberately to it."

That related to a wire improperly laid or strung and insulated. The master or superior was bound to know of this danger because he provided same. And, knowing of it, he is bound to warn the employee. But before he is to warn an employee as to the dangers incident to the employment, due care having been otherwise exercised, he must know or have reason to believe that the employee is inexperienced. A master who carries on an eminently dangerous and hazardous undertaking, such as the generation and distribution of electricity, is bound to know the character and extent of the danger, and, if the servant that he employs is inexperienced, and he has knowledge or as a reasonable man ought to know, of such inexperience, it is his duty to reasonably instruct him of such danger, and, unless he so notifies him, he would be guilty of negligence. Instruction No. 1, as given, extends beyond that rule, requiring the master to warn his servant so that he will comprehend his danger. The warning should be such that a reasonable person would understand, comprehend, and appreciate the danger. The warning of an inexperienced servant generally that his occupation was hazardous and dangerous and that he ought to be careful does not seem to be a sufficient warning, because there is no need to warn him if he is experienced, and, if he is inexperienced and employed in a dangerous or extra-hazardous occupation, liability cannot be escaped by shifting it under the doctrine of assumption of risk under an uncertain warning. The position is an experienced and skilled electrician or master in a reasonable way warning an inexperienced servant as to great danger so that he can reasonably comprehend and avoid same.

For the error committed in giving said instruction No. 1, the case is remanded with instructions to grant a new trial.

All the Justices concur.