# Kehler *v.* Schwenk, Appellant.

[Marked to be reported.]

*Negligence—Master and servant—Protection from dangers.*

Where a master voluntarily subjects his servant to dangers, such as in good faith he ought to provide against, he is liable for an injury occurring to the servant therefrom.

*Risk of employment—Infants.*

In the case of young persons it is the duty of the employer to take notice of their age and ability, and to use ordinary care to protect them from risks which they cannot properly appreciate, and to which they should not be exposed.

In an action by a minor to recover damages for personal injuries, it appeared that he was about fourteen years old, of small size for his age and physically weak; that he was employed as a slate picker, but that against his will he was ordered to drive a dump-car; that he had no experience in the latter employment and received no instruction how to perform it; that the latter employment was highly dangerous, and the appliance from the use of which the injury arose was only in partial use, and the testimony disclosed a perfectly simple device in extensive use, which practically removed all danger. *Held,* that the case was for the jury, and that a verdict for the plaintiff should be sustained.

*Defective appliances—Evidence.*

Evidence that the track where the accident occurred had rotten ties, loose rails and projecting ends of ties with holes in the ground between the ties both inside and outside the rails, was properly admitted as showing such a condition of non-repair as would most probably have occasioned the stumbling of any person, old or young, while engaged in the work.

Evidence was also properly admitted that a contrivance was used in other collieries which was entirely free from the arrangement which constituted the dangerous character of the one in use at the defendant's colliery.

*Evidence—Opinion of witness.*

In this case witnesses who showed by their preliminary examination

that they were experienced in performing the work in the course of which the plaintiff was injured, testified that in their opinion it was absolutely necessary for the plaintiff to get in between the rails in order to unhitch the chain of the dump-car, and that the plaintiff had neither size nor strength to unhook the mule while outside the rails. *Held,* that such evidence was properly admitted. It was not the mere opinion of witnesses but a statement of the witnesses' knowledge of what had to be done.

Argued May 24, 1892. Appeal, No. 13, July T., 1892, by defendant, William Schwenk, from judgment of C. P. Northumberland Co., Sept. T., 1883, No. 251, on verdict for plaintiff, Daniel Kehler. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Case by minor by next friend to recover damages for personal injuries.

The facts appear by the opinion of the Supreme Court.

At the trial before SITTSER, P. J., when Milton M. Haas was on the stand, plaintiff proposed to ask him whether a boy of the size and strength of Daniel Kehler at the time of the accident, could have unhitched the mule from the car in any other manner than that described by the witness, to wit, by getting in front of the car. Objected to. Objection overruled and exception. [1]

The witness answered: "I don't think he could."

Plaintiff proposed to show by the same witness that the road bed upon the dirt bank in question, belonging to the colliery of Schwenk, Robertson & Co., known as the Black Diamond colliery, and being the one upon which Daniel Kehler was injured on the 13th of September, 1882, was in bad condition; that holes were worn between the sills both outside and inside of the tracks; that many of the sills upon which the iron rails were laid were rotten, and would not hold nails or spikes so as to fasten the rail; that the path upon the outside of the track was in bad condition; that the ties extending beyond the rail were rotten, and also extended above the surface of the path. This for the purpose of showing that the place at which Daniel Kehler was put to work in pursuance of the order and direction of one of his employers, to wit, George Robertson, was dangerous, unfit and unsafe for a boy of the size, age, strength, physical condition and experience of Daniel Kehler at that time.

Objected to. Objection overruled and exception. [2]

The witness testified substantially in accordance with the offer; and further as recited in opinion of Supreme Court.

When Daniel Specht, a witness for plaintiff, was on the stand, plaintiff proposed to ask him whether a boy of Daniel Kehler's size and physical strength could have unhooked a mule while in rapid motion while the boy was on the outside of the rails. Objected to. Objection overruled and exception. [3]

The witness testified that he could not.

Counsel for plaintiff proposed to show by John McEliece, a witness for plaintiff, that the hitch, contrivance and appliances used upon the dirt bank of defendant company for the purpose of dumping coal dirt in 1882, were not at that time, or at any other time prior thereto, in general use, or in fact in use at any colliery in either Northumberland or Schuylkill county; that this was the only hitch of this kind, and that it was unsafe and dangerous. This for the purpose of showing that this contrivance, including the hitch, was not in general use; that it was exceptional and dangerous, and not a fit appliance to the purpose for which it was used. Objected to. Objection overruled and exception. [4]

The witness testified that he was familiar with the appliances.

Counsel for plaintiff proposed to show by the same witness that, grade or no grade, there never was such an appliance, as that used by defendants upon their dirt bank for taking out coal dirt, used upon any other dirt bank in Northumberland or Schuylkill county. This to be followed with the testimony of persons who were acquainted with the different dirt banks, showing that upon other dirt banks of a character similar to that of the defendants, and where the same material was being hauled, that no such appliance as that furnished by the defendants to the plaintiff was used. Objected to. Objection overruled and exception. [5]

The witness testified substantially as in the offer.

The court charged in part as follows:

" In passing upon the question of negligence which is charged against the defendants in this case, you should consider what was the situation of affairs immediately before the accident, and at the time of it. Take all the circumstances

which were surrounding the case, as they would naturally appear to the defendants, in reference to the business they were conducting.   Consider the manner in which they were conducting it, take the age, size and intelligence of this boy into consideration, the manner in which the car was constructed, and then determine whether these defendants were guilty of negligence in furnishing such a car and appliances to such a boy.   You can also consider whether it was the common and usual practice for boys of the age of the plaintiff, and of his strength and intelligence, to drive and unhitch mules from cars of this kind.    Take all this into consideration and determine whether there was any negligence in this respect. [6] . . . .

"If this was a dangerous business; if it was dangerous to unhitch this mule in front of the car; if the defendants were guilty of negligence in providing such machinery for this plaintiff to operate, and this plaintiff being fourteen years of age knew it was dangerous, and had sufficient judgment and sense that he ought to have known better than to have incurred this risk, then he would be guilty of contributory negligence and cannot recover.    But if he was of such tender years, or did not have sufficient sense to appreciate the danger and know better than to go there and do that work, then he would not be guilty of contributory negligence. That is a question for you." [7]

Defendant's points were as follows among others:

"1. Under all the evidence in the case the plaintiff is not entitled to recover and the verdict of the jury should be for the defendants.  *Answer:* This we do not affirm, neither do we say to you that, under all the evidence in the case the plaintiff ought to recover; but whether the plaintiff ought to recover or not is a question for you to determine after a careful consideration of all the evidence in the case, under the instructions which we have given you." [8]

"6. If the jury find from the evidence that the lower hitch, such as was used by the defendants, was one of a kind in general use upon dirt banks with similar grades, there was no negligence in the use of that hitch by the defendants, and the plaintiff cannot recover.  *Answer:* We affirm this point so far as to say that there was no negligence in the use of that hitch

by the defendants and that so far as that branch of the case is concerned the plaintiff cannot recover, unless there was some negligence in sending a boy of the age and mental condition of the plaintiff to work with that kind of machinery, without any instructions as to its proper use." [9]

" 8. If the jury believe that the plaintiff voluntarily placed himself in front of the car, when moving at a rapid rate, at an improper point and before the mule had reached the point where it was necessary to uncouple in order that the car might run to the end of the dump, and that he was hurt in such position, then he was guilty of such contributory negligence as would prevent a recovery in this case. *Answer :* This we affirm provided you find that this boy had sense enough to know better." [10]

" 9. If the jury believe that the mule would have turned out at the level place testified to, and at a point where the spreader could have been unhooked at the side of the car and without the plaintiffs getting between the rails, and that the plaintiff attempted to unhook the spreader before this point was reached and was hurt in such an attempt, he was guilty of contributory negligence, and there can be no recovery in this action, and the verdict should be for the defendant. *Answer :* This is affirmed if he had sense enough to know better." [11]

" 10. The undisputed evidence by both plaintiff and defendant, showing that the kind of dump car used at defendant's colliery for many years prior and a long time subsequent to the accident, the plaintiff, when he was employed at the colliery, assumed all the risks incident to the use of this dump car, and there being no evidence that the car was out of repair, the plaintiff cannot recover in this suit by the mere allegation that the accident might have been avoided if the car had been of different construction, and the verdict should be for the defendant. *Answer :* We do not affirm this point as drawn. There are various facts stated in it which are questions for the determination of the jury." [12]

" 11. Daniel Kehler having testified that when he was directed by Edwin Smith, in charge of the chutes, to assist on the dirt dump, he, Kehler, informed Smith that the work was too heavy for him, and Smith directed him to see Robertson about it and Kehler neglected to do so, but went to work

without seeing Robertson, who was then about the breaker, and continued to work about the dirt bank until injured, he did so voluntarily and negligently, and assumed all the natural and ordinary risks of such employment, and the plaintiff cannot hold the defendant responsible for the injuries sustained. *Answer :* This is not affirmed as drawn." [13]

"13. If the jury believe that Edward Smith sent the plaintiff out to work without orders to do so from any of the defendants, and it was found that the employment was unsuitable and the appliances unsafe, and the plaintiff was injured while performing the services which he was directed to perform by the said Edward Smith, such injury was caused by the said Edward Smith, a fellow servant, and there can be no recovery. *Answer :* This is not affirmed. The defendants were bound to furnish reasonably safe appliances for all those set to work by them, or by any one who had the power to set others to work in their employ." [14]

The plaintiff presented this point:

"1. That under the evidence of this case the defendants were in duty bound to put Daniel Kehler at such work as was suitable and reasonably safe for a boy of his age, size, strength, physical ability and experience. *Answer :* This we affirm ; and, considering whether it was negligence to put this boy at this work, you will take into consideration whether it was usual and common to put boys of his age and strength at this kind of work. What was the practice in the community ? Consider, too, the nature of the work, and whether any great amount of strength was required. Take all these matters into consideration in determining whether it was negligence to put this boy at work driving a mule on this dirt bank." [15]

Verdict for plaintiff, $1,550 ; judgment. Defendant appealed.

*Errors assigned* were (1–5) rulings on evidence, quoting bills of exceptions and evidence ; (6–15) instructions, quoting them.

*C. M. Clement,* with him *S. P. Wolverton, W. H. M. Oram* and *W. B. Faust,* for appellant.—When this case was here before, the court said there was evidence that the unhitching of a dumper of this kind was manifestly dangerous, and that there

was evidence to the contrary and that the amount of danger depended on factors making a varying standard which was necessary for the jury to determine: Kehler v. Schwenk, 144 Pa. 348.

The opinions of Haas and Specht as to whether the work could have been done safely by a boy of Kehler's size and strength, were improperly admitted. The jury were equally capable with the witnesses of forming an opinion from the facts stated: Rogers, Expert Testimony, 13; Bemis v. Central Vermont R. R., 58 Vt. 636. In the following cases railroad experts were not allowed to express opinions on the facts which they testified to: Kitteringham v. Sioux City R. R., 62 Iowa, 285; Belair v. C. & N. W. R. R., 43 Iowa, 667; Muldowney v. Illinois Cent. R. R., 36 Iowa, 472; Keller v. N. Y. Central R. R., 2 Abbott (Ct. of App.) 480; Gavisk v. Pacific R. R., 49 Mo. 274; Weane v. K. & D. M. R. R., 45 Iowa, 246; R. R. v. Schultz, 43 Ohio St. 270; Ballard v. New York R. R., 126 Pa. 141; Franklin Fire Ins. Co. v. Gruver, 100 Pa. 272.

It was the duty of plaintiff to keep the track in repair, and having failed to do so the accident was the result of his own negligence.

It was error for the court to leave it to the jury to determine whether it was the common practice of boys of the age, strength and intelligence of the plaintiff to perform this work. It is only in rare cases, like that of Rummel v. Dilworth, 131 Pa. 509, that there seems to be any different rule laid down for boys than for persons of maturer years. The danger was an obvious one, and the work required no special instruction: O'Keefe v. Thorn, 24 W. N. 379; Rickert v. Stephens, 133 Pa. 538; Zurn v. Tetlow, 134 Pa. 213; Beach, Con. Neg., 360; Lehigh, etc., Coal Co. v. Hayes, 128 Pa. 294.

An infant of the age of fourteen years is presumed to have sufficient capacity to be sensible of danger and to have the power to avoid it: Nagle v. Allegheny R. R., 88 Pa. 35; Strawbridge v. Bradford, 128 Pa. 200; Gillespie v. McGowan, 100 Pa. 149; Colgan v. West Philadelphia Pass. Ry. Co., 4 W. N. 401; Melchert v. Smith Brewing Co., 140 Pa. 448; Gillen v. Rowley, 134 Pa. 209; Ford v. Anderson, 139 Pa. 261.

The court was in error in imposing upon defendant the

burden of showing that plaintiff was possessed of sufficient
sense to apprehend danger, and in this it disregarded the es-
tablished rule of law; for while it is true that the measure of
responsibility imposed upon an infant is progressive and in-
creases from year to year, nevertheless the courts have singled
out the period of fourteen years as the time for shifting the
burden of proof, and as an age at which infants are clothed
with greater authority and therefore inferred to be possessed
with more discretion than at an earlier period.

The plaintiff undertook a perilous employment, the danger-
ous character of which he knew. He consequently assumed
all the risks: Phila. & Reading R. R. v. Hughes, 119 Pa. 302;
Marsden v. Haigh & Co., 14 W. N. 526; Wanamaker v. Burke,
17 W. N. 225; New York, Lake Erie & Western R. R. v. Bell,
112 Pa. 400; Lehigh Valley Coal Co. v. Jones, 86 Pa. 432;
Waddell v. Simoson, 112 Pa. 567; Reese v. Clark, 1 Adv. R.
8; Bemisch v. Roberts, 143 Pa. 1; Pittsburgh etc. R. R. v. Sent-
meyer, 92 Pa. 276; Diehl v. Lehigh Iron Co., 140 Pa. 487.

The dump car used by the plaintiff was not out of repair,
and was ordinarily safe for the use to which it was put. Where
an employer has furnished his employees with tools and appli-
ances, which, though not the best possible to be obtained, may
by ordinary care be used without danger, he has discharged
his duty and is not responsible for accidents: Pittsburgh
& Connellsville R. R. v. Sentmeyer, 92 Pa. 276; Allison Mfg.
Co. v. McCormick, 118 Pa. 519; Drew v. Gaylord Coal Co.,
3 Cent. 389; District of Columbia v. McElligott, 117 U. S.
621; Augerstein v. Jones, 139 Pa. 183; Kehler v. Schwenk,
144 Pa. 348.

*P. A. Mahon, Voris Auten* with him, for appellee.—The
question of qualification as an expert is, in the first instance,
for the court, resting largely in the exercise of a sound discre-
tion, and it is for the jury to decide whether any, and how
much, weight should be given to his opinion: Bank v. Wire-
bach, 106 Pa. 37; Allen's Ap., 99 Pa. 201. Every man is an
expert in the particular branch of business he is familiar with.
Whelen v. Harrison, 40 Leg. Int. 170.

It was proper to admit evidence to show that the implements
used by the defendant company, including their method of

attaching their mule to the car, were not in general use, that they were exceptional and dangerous and not fit appliances for the purposes for which they were used.

In view of the youth and inexperience in the business of driver on the part of Kehler, it was necessarily a question for the jury whether his employer had sufficiently warned and instructed him about the dangers of the employment and how to avoid them, or had done all that was reasonably necessary to protect him from injury: Patterson v. Pittsburgh & Connelsville R. R., 76 Pa. 389; Rummel v. Dilworth, 131 Pa. 509.

OPINION BY MR. JUSTICE GREEN, October 3, 1892.

First and third assignments of error. The witnesses Milton Haas and Daniel Specht, had quite considerable experience in driving mules on the dirt bank of the defendant, for the purpose of dumping coal dirt over the bank at the end of the dump. Haas, after saying he was employed by defendant at the colliery in question and was on the dirt bank the day of the accident, testified: " I was acquainted with the construction of the dump car and the attachment for the mules." He then described fully the whole construction of the car and the attachment. He said further: " I drove a mule on this dirt bank. Sometimes it was part of my work to unhitch the mule. There was a grade at the end of the dirt bank where the cars were dumped. It was necessary to make the mule go on a trot in order to get the dumper up to the head block. If the mule wasn't driven pretty rapidly the dumper wouldn't go up. . . . It was necessary to unhitch the mule before the dumper arrived at the end of the bank because the mule couldn't go clear out or he would have went head over heels down the bank. The person driving the mules, in order to unhitch, was obliged to go in front and take hold of the chain with one hand, and with the other hand unhook the spreader. Whenever I unhooked it I had to get right in front of it. I was obliged to get in front of the car between the rails. The car was moving rapidly while I was doing that because the mule had to start on a trot." The witness further said: " I knew Daniel Kehler's size at that time. He was a small boy for his age. Q. What was his physical strength for a boy his age? A. I don't know that; he was very light—light frame."

Such being the preliminary testimony of the witness, counsel for plaintiff proposed to ask him whether a boy of the size and strength of the plaintiff could have unhitched the mule from the car in any other manner than that described by the witness. This proposed proof was objected to by the defendant's counsel, but the court overruled the objection and admitted the offer. Whereupon the question was put to the witness who answered: " I don't think he could." It is evident that the subject-matter of this testimony was of serious importance to the plaintiff's case. A favorable answer would relieve him from the charge of contributory negligence, and it would also tend to support his allegation that he did what he was obliged to do in order to perform the service he was set to do by the plaintiff. The witness had shown ample knowledge of the whole situation, he knew what had to be done from his personal experience, the information to be communicated by the answer was something which the jury ought to know, to dispose of the case intelligently. It was not a mere opinion of the witness that was sought, but his actual knowledge of what had to be done by the plaintiff, in order to carry out his employer's directions and perform the duty assigned to him. We have no doubt it was entirely competent to make this proof. In fact we do not see how the fact as to the character of the plaintiff's service, and the actual things he was obliged to do could be proved in any other way.

The same remarks are true in a still more eminent degree of the testimony of Daniel Specht. He also developed a most practical and actual knowledge as to what was necessary to be done in the performance of the plaintiff's service. He said it was absolutely necessary for the plaintiff to get in between the rails in order to unhitch the chain and he further said that the plaintiff had neither size nor strength to unhook the mule while outside the rails. We think the offer of proof of this witness also was properly received and we therefore dismiss the first and third assignments of error.

Second assignment of error. The condition of the track upon which the plaintiff was obliged to perform his duties was, necessarily, an element in the question of the defendant's negligence in furnishing the appliances which the plaintiff was obliged to use. We do not see how that feature of the case

can be eliminated from the inquiry. We said as much as this in the former hearing of this case. The plaintiff, testifying as to the facts of the injury, said: "I fell in the track and one wheel of the dumper run over me; I was trying to unhook the mule and I fell; I was between the rails in front of the car in the act of unhitching the mule." He also said: "After the mule turned out that way I was laying right under here; I don't know how I happened to fall, I guess I stumbled over something; I was running in front of the car and I had hold of this chain and I fell between the wheels on the track." And again: "Certainly, it was necessary to get hold of the chain so you would be right there, so you couldn't miss it; you had to run, had to have something to steady yourself, because it was full of holes on the outside and inside of the rail. We used to have hold of this stretcher with one hand and with the other hand we unhooked the chain as soon as we had slack enough."

There was some evidence that it was the duty of the persons running the dumper to keep the track in order, though all of these boys that were engaged in this service, Haas, Specht and the plaintiff, testified that they were not instructed to do so. But if it were clearly proved that such was the rule at this place, the plaintiff could not possibly be charged with the consequences of not observing it because he had only been put upon this service the day before, and he certainly could not be held reponsible for any breach of duty in this respect. Now if the track had rotten ties, loose rails and projecting ends of ties, with holes in the ground between the ties both inside and outside the rails, it was in such a condition of non-repair as would most probably and naturally occasion the stumbling of any person, old or young, while engaged in the performance of so hazardous a service. Under this state of the testimony, the jury would have been quite at liberty to infer that the condition of the track was the occasion of the boy's falling. It was therefore proper, in our judgment, to admit evidence of the condition of the track at the time of the accident, and we dismiss the second specification of error.

Fourth and fifth assignments. We are clearly of opinion that the testimony of McEliece was properly admitted. It related to the very subject both of the general use of this kind of a dumper and hitch, and the existence of the defects com-

plained of by the plaintiff in the structure itself. This is the very essence of the plaintiff's case. The witness had worked at several different collieries and said he had never seen a contrivance of this kind in use. He also described the kind that was in use at those collieries, and showed that they were entirely free from the arrangement which constituted the dangerous character of the one in use at the defendant's colliery. It matters not that other persons testified that there were other collieries at which this same kind of dumper was used. The whole of the testimony on both sides raised a question of fact as to the generality of the use of either kind, and especially as to the dangerous character of the one in use at this colliery, and the decision of that question was for the jury.

We think the remaining assignments of error can be considered together. The case was tried upon an allegation by the plaintiff that the defendant was guilty of culpable negligence in putting him at work upon a service, dangerous in its character, with an appliance which was entirely insufficient for his protection, and was not in general use for such a purpose, and he being at the time too young in years and too weak in body to be put upon such a service, and further that the dangers were not pointed out to him and he was not instructed how to avoid them. The cause was most carefully and, as we think, correctly tried by the learned court below, with all due cautions to the jury, and giving the defendant the full benefit of all the restrictions and limitations upon the liability of an employer in an action by an employee. The jury were instructed that if the plaintiff had sufficient judgment and sense to know that the employment was dangerous, and nevertheless voluntarily engaged in it, he was guilty of contributory negligence, and could not recover notwithstanding his youth. The court also said to the jury that if the plaintiff was of such tender years or did not have sufficient sense to appreciate the danger, and know better than to engage in so dangerous a service, then he would not be guilty of contributory negligence.

On the trial it was clearly proved, and not contradicted, that the plaintiff was a little past fourteen years of age at the time of the accident, and abundant proof was given that he was of small size for his age and physically weak. It was also fully proved, and not contradicted, that he was employed to

do service as a slate picker, and entered upon and performed that service, but that the day before the accident he was directed by the agents of the defendant to go out upon the dirt heap and drive the dumping car. It was proved by the plaintiff and his father, that when he was directed to do this work both he and his father objected to it, the plaintiff complaining that he was sore and stiff all over and that the work was too heavy for him. It was also proved by the plaintiff, and not contradicted, that he had no previous experience at driving a dump car, until he was set to work the day before the accident, and that no one explained to him the danger of the service, or gave him any instruction how to perform it, or showed him how to avoid the danger. The character of the service and the manner in which it was necessary to perform it, and the necessity of the plaintiff's getting in between the rails of the track while the car was running in order to unhitch the spreader, because of his inferior size and strength, was fully proved, and if there was any opposing testimony on this subject a question of fact arose which it was necessary to submit to the jury. We are constrained to say that, under all the testimony, the jury were entirely justified in finding that the character of the service which the plaintiff was required to perform was highly dangerous for any one, and especially so for the plaintiff on account of his youth and physical weakness. There was ample proof that there was another mode of constructing the attachment, by means of which the spreader would detach itself the moment the mule turned about in order to let the dumper run on to the end of the track, and that dumpers of that character were in use at quite a number of collieries named by the witnesses, who described them. On the other hand proof was given by the defendant that the appliance used at the defendant's colliery, was the same in structure as those used at a number of other collieries named by the witnesses, and thus a question of fact was raised as to the generality of the use of the kind of dumper which was employed at the defendant's colliery. This question also was referred to the jury, with the instruction, that if they found that this method of attachment, was in use by people engaged in the business, the defendants were not guilty of negligence in using it. It seems to us that all the rights of the defendants as employers of the plaintiff, were carefully

guarded by the learned court below in the general charge and
in the answers to points, and the simple question remaining is,
whether upon the combination of facts constituting the plain-
tiff's case as set out in the narr, there can be a recovery.

Upon this question we think the case comes within several
of our decisions which authorize a recovery in such circum
stances.   Thus in the case of Patterson v. Pittsburgh & Con-
nelsvile R. R. Co., 76 Pa. 389, we said : " It is true the
master is not responsible for accidents occurring to his servant
from the ordinary risks and dangers which are incident to the
business in which he is engaged; for in such case the con-
tract is presumed to be made with reference to such risks.
But on the other hand where the master voluntarily subjects
his servant to dangers, such as, in good faith, he ought to pro-
vide against, he is liable for any accident arising therefrom.
. . . . The servant does not stand on the same footing with
the master.   His primary duty is obedience, and if, when, in
the discharge of that duty, he is damaged through the neg-
lect of the master, it is but meet he should be recompensed.
The general principle, as recognized by our own cases, inter
alia, Caldwell v. Brown, 3 P. F. Smith, 453, and Frazier v.
Penna. Railroad Company, 2 Wright, 104, is, that the em-
ployer is bound to furnish and maintain suitable instrumen-
talities for the work or duty which he requires of his employees,
and failing in this he is liable for any damages flowing from
such neglect of duty. . . . But where the servant, in obedi-
ence to the requirements of the master, incurs the risk of
machinery, which, though dangerous, is not so much so as to
threaten immediate injury, or where it is reasonably probable
it may be safely used by extraordinary caution or skill the rule
is different.   In such case the master is liable for a resulting
accident."

The principle of this decision, would exonerate the plaintiff
in the present case, from a charge of contributory negligence
in engaging in a palpably dangerous service, even if he were
a full grown adult, because there was other testimony to the
effect that the appliance might be used with safety although
apparently dangerous, but when his youth and physical weak-
ness are considered, and the fact that he was ordered to do this
work, and that he objected to doing it, and went reluctantly

to the service, it cannot be doubted that he is entirely free from any charge of contributory negligence and also that the master became subject to all the risk of an accident. He was but little more than a child either in years or in strength, and could not be expected to have the will power of a full grown man in resisting his master's orders. He cannot be held therefore as one who voluntarily engages in a dangerous service, especially by a master who specifically directed him to do the hazardous work. On the contrary the very fact of the plaintiff's youth and weakness is one of the elements that go to make up the charge of negligence on the part of the defendant in putting such a person upon such a service. It seems to us the master, in such circumstances, and not the servant, must be held to have assumed the risks of the service.

The case of Rummel v. Dilworth, 131 Pa. 509, goes much farther than is necessary to sustain the plaintiff's action. There the plaintiff was seventeen years of age and the service assigned to him was not manifestly dangerous on account of the manner in which it had to be performed. The danger arose from the absence of protective appliances which, had they been present, would have prevented the accident. The plaintiff was employed as a drag-down, but of his own accord, was acting as a roller, when he received his injury, and he therefore assumed the risks of the latter service. But we held that if he was permitted to act as a roller, and that was for the jury, "he was entitled to instruction and protection in the same manner as though he had been employed as a roller." We also held as to every workman "that he has the right to suppose that his employer has provided such guards and means of protection from injury, in the use of the machinery, tools and appliances as are usual and reasonably necessary for his safety, and he cannot be held to assume the risks attendant on their absence, unless such absence is apparent, or his attention has been called to it. If the business is one with which he is not familiar he has a right to expect that its dangers will be pointed out to him, and that he will be instructed in those things necessary for him to know in order to his own safety. He cannot be held to assume the risk of dangers of the existence of which he has no knowledge."

We held also that "In the case of young persons it is the

duty of the employer to take notice of their age and ability, and to use ordinary care to protect them from risks which they cannot properly appreciate, and to which they should not be exposed. The duty in such cases to warn and instruct grows naturally out of the ignorance or inexperience of the employee, and it does not extend to those who are of mature years, and who are familiar with the employment and its risks."

It will be seen from this decision, that in actions by young persons against their employers, we recognize as sources of liability, the inexperience of the servant, and the want of specific instruction as to the dangers of the service, and we suspend the rule that the servant assumes the risk of the service when he has not knowledge by experience, or by specific instruction. All these sources of liability existed in the present case. The plaintiff was very young, he had no knowledge by experience or by instruction as to the dangers of the service, the service was in reality highly dangerous, the plaintiff was not employed to engage in this particular service but in another, and was urged into it against his will, the appliance from the use of which the injury arose was only in partial use, and the testimony disclosed a perfectly simple device, in extensive use, which practically removed all danger. The most of these facts were proved without contradiction and ample testimony was given as to all of them. In such circumstances the case was clearly for the jury, and, as it seems to us, the verdict was entirely justified by the evidence. We are of opinion that there was no error in the charge nor in the answers to points and therefore think the judgment should be affirmed.

Judgment affirmed.