# Robson, Appellant, *v.* Lehigh Valley Railroad Company.

*Negligence—Railroads—Brakeman—Overhead bridge—Master and servant—Assumption of risk—Case for jury.*

1. Where on an issue of assumption of risk by a servant who has sustained injuries, the facts are controverted or such that different inferences may be drawn therefrom, the question as to the assumption of risk should be submitted to the jury under proper instructions from the court.

2. In an action against a railroad company to recover damages for the death of a brakeman who was killed by his head coming in contact with an overhead bridge while he was riding at night on the top of a freight car on a side track, the question of the assumption of risk by the deceased is for the jury, where it appears that the deceased was an extra brakeman; that the side track was not guarded by dangling ropes near the bridge, as were the main tracks; that the testimony of the defendant's employees to the effect that the deceased knew of the bridge, was contradicted; that there was testimony that the deceased had never been under the bridge before; and the proof shows that the space between the top of the car and the span of the bridge was only slightly less than the height of an ordinary man, so that it was difficult to determine under the circumstances whether it was safe to stand erect on the top of the car in passing under the bridge.

Argued March 4, 1912.   Appeal, No. 54, Jan. T., 1912, by plaintiff, from judgment of C. P. Northampton Co., Feb. T., 1911, No. 17, on verdict for defendant in case of Helena Robson, by her next friend Edward Robson, v. Lehigh Valley Railroad Company.   Before MESTRE-ZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for the death of plaintiff's husband. Before STEWART, J.

The circumstances are narrated in the opinion of the Supreme Court.

At the trial the court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*W. H. Kirkpatrick,* of *Kirkpatrick & Maxwell,* for appellant.—Cases are exceptional in which the court may direct a verdict for the defendant on the strength of testimony presented by him. They never arise where there is a real controversy as to the facts or doubts as to the inferences to be drawn from them: Rauch v. Smedley, 208 Pa. 175; Penna. R. R. Co. v. Weiss, 87 Pa. 447; Devlin v. Beacon Light Co., 198 Pa. 583; McCafferty v. Penna. R. R. Co., 193 Pa. 339.

A list of Pennsylvania cases in which brakemen have been held to have assumed the risk of objects overhead or near the track, together with the time of their acquaintance with the danger in each case, follows: Pitts. & Connellsville R. R. Co. v. Sentmeyer, 92 Pa. 276; Brossman v. R. R. Co., 113 Pa. 490; Stoneback v. Thomas Iron Co., 17 W. N. C. 295; Boyd v. Harris, 176 Pa. 484; Fulford v. R. R. Co., 185 Pa. 329; Kelly v. R. R. Co., 11 Atl. Repr. 659.

A case almost precisely similar is Robel v. Chicago, Etc., Ry. Co., 35 Minn. 84 (27 N. W. Repr. 305).

See also St. Louis, Ft. S. & W. R. R. Co. v. Irwin, 37 Kansas 701 (16 Pac. Repr. 146) ; Louisville N. A. & C. Ry. Co. v. Wright, 115 Indiana 378 (16 N. E. Repr. 145; 17 N. E. Repr. 584).

*E. J. Fox,* with him *J. W. Fox,* for appellee.—Where

the testimony in support of an action is a mere scintilla may that opposed to it is so overwhelming that no real controversy is raised and where the jury could not find for the plaintiff without a capricious disregard of apparently truthful testimony probable in itself and not at variance with any admitted or proved facts, a verdict and be directed for the defendant: Cromley v. Penna. R. R. Co., 211 Pa. 429; Holland v. Kindregan, 155 Pa. 156; Lonzer v. Lehigh Valley R. R. Company, 196 Pa. 610; Keiser v. Lehigh Valley R. R. Company, 212 Pa. 409.

"A servant who has had full opportunity of knowing the danger and risk of his employment but makes no complaint to his employer as to the danger to which he is exposed, but continues to work voluntarily notwithstanding, assumes the risk of injury from the dangers to which he is exposed:" Schneider v. Philadelphia Quartz Company, 220 Pa. 548; Simmons v. Southern Traction Company, 207 Pa. 589; Myers v. Edison Elec. Illum. Co., 225 Pa. 387; Sandt v. North Wales Foundry Co., 214 Pa. 215.

OPINION BY MR. JUSTICE MESTREZAT, April 15, 1912:

This was an action of trespass brought to recover damages for the death of the plaintiff's husband who was killed while employed as an extra brakeman shifting freight cars in the defendant's yard at South Bethlehem, Pennsylvania. The learned judge of the court below directed a verdict for the defendant on the ground that by the undisputed testimony of the defendant's witnesses the deceased knew or should have known of the danger and, therefore, assumed the risk which resulted in his death. We think the learned judge misapprehended the effect of the testimony and his duty in the premises.

Fred Robson was employed by the defendant as an extra brakeman in its freight yard at South Bethlehem

in the latter part of the year 1909. His duties consisted in "letting off brakes and changing cars once in awhile, sometimes giving signals to the engineers," coupling cars, etc. While thus engaged on a side track, on the night of December 28, 1909, he was knocked off the top of a freight car and killed by coming in contact with a bridge which spans the company's tracks and yard. The only witness of the occurrence was William Bush, the conductor of the crew with which Robson was working. He testified that he was standing on the grabiron on the right-hand side of the rear car, and that Robson, when he last saw him, about half a minute before the accident, was on top of that car. When the car was about two car-lengths beyond the bridge, Bush felt something strike him on the shoulder and, looking down, saw Robson's body on the ground between the two cars. He did not see Robson fall and heard no sound.

The bridge which caused the accident crosses the four main tracks and fifteen sidings of the defendant's road at a height of eighteen feet and one inch. The space between the top of the cars on which Robson was working and the bridge was four feet and eleven inches. Robson was about five feet seven inches tall, and hence the bridge was eight or nine inches too low to allow him to pass when standing erect on the top of a car. Neither could a man of ordinary height standing on a car, it will be observed, pass under the bridge with safety. There were no lights under the bridge or in the yard, but a few city lights on top of the bridge. There were "tell tales" or dangling ropes to warn brakemen of the approach to the bridge over two of the main tracks but none over the sidetracks. Whether it was customary to use signals of approach to bridges under such circumstances was, under the evidence, a disputed fact.

The statement alleges that the defendant company was negligent in maintaining and permitting to be maintained the bridge over the tracks in such proximity to

the top of the cars as "to make the place an unsafe and improper one for the performance of the duties of a brakeman upon freight or box cars running over defendant's tracks at that point," and in not warning or instructing the deceased by the maintenance of "tell tales" or other effective device of the danger caused by the improperly constructed bridge. The real defense, and the one on which the learned judge ruled the case, was that the danger of coming in contact with the bridge was an open and obvious one which Robson knew or by the exercise of ordinary prudence or care should have known, and that, therefore, he assumed the risk incident to the service. The plaintiff denies that the deceased knew or had the opportunity by observation of knowing the danger, and hence could not have assumed the risk of being struck by the bridge while engaged at his employment. This raised an issue of fact which, under the evidence submitted, was necessarily for the jury. The fact was not admitted or conclusively established by evidence, but was contraverted and depended entirely on oral testimony. In such cases, the credibility of the witnesses is for the jury, and it is for them to determine whether the testimony adduced on the trial establishes the facts at issue between the parties. This is the well settled rule. In 26 Cyclopedia of Law and Procedure 1478, the rule is stated thus: "Where on an issue of assumption of risk by a servant who has sustained injuries, the facts are contraverted, or such that different inferences may be drawn therefrom, the question as to assumption of risk should be submitted to the jury under proper instructions from the court." If there is no controversy as to the facts or doubt as to the inferences to be drawn from them, the court may direct a verdict for the defendant on the strength of his own testimony, but, as we have frequently said, such cases are exceptional. In the case at bar the learned judge, after the plaintiff had made out a prima facie case, directed a verdict for the defendant company on the testi-

mony of its two conductors, two brakemen, and train-master who were in its employ at the time of the accident and at the time of the trial. In fact, the judge apparently thought that it was his duty to hold as a matter of law that because Robson was working about the bridge at the time he was killed he assumed the risk of the service regardless of the facts necessary to charge him with notice of the danger. He says in the charge: "It can't be disputed, it seems to the court, that where a man is working in and about a bridge, such as this was, engaged in drilling cars, he must be held to have knowledge of the height of that bridge and of the height of the car on which he is working." This error and misconception of the effect of the testimony of the defendant's employes resulted in the erroneous withdrawal of the case from the jury.

The witnesses on the strength of whose testimony the court directed the verdict were all in the service of the defendant company and to that extent were interested. The testimony of the witness Bush was in part contradicted. The jury would have been justified in finding that Robson worked only four nights in the defendant's freightyard. This was inferentially established by the failure of the defendant company to produce its other time sheets, and could also have been found from the testimony of the defendant's witnesses. Robson lived at Easton, twelve miles distant from South Bethlehem, was employed as an extra brakeman, and was sent to one place or another as his services were needed. The testimony relied on by the court to sustain its action in directing the verdict shows at most that Robson worked only four nights in the South Bethlehem yards, and that the crews with which he worked passed frequently under the bridge. It fails to show that he had passed under the bridge while riding on the top of a car, or, in fact, that he had passed under the bridge at all until the night of the accident. The collision with the bridge which resulted in Robson's death occurred the first time

he passed under the bridge the night of the accident. If the testimony of Robson's brother is credible, Bush told him that Robson had never been under the bridge prior to the time he was killed. Bunstein, a freight conductor, worked with Robson one night and the crew went under the bridge, but he does not testify that Robson was on top of a car at that time. Hann, a brakeman, worked one night with Robson and the crew passed under the bridge, but he did not know whether Robson was with it or in another part of the yard shifting cars. Kelly, a brakeman, worked with Robson three nights and the crew went under the bridge, but they did no work on the siding where Robson was killed. Ault, the trainmaster and the defendant's remaining witness, testified from time-slips that Robson worked four nights in the yard and that the crew went under the bridge. It will be observed that, conceding the credibility of the defendant's witnesses, their testimony did not conclusively show that, except the night he was killed, Robson was on the top of a car when he passed under the bridge or that he went under the bridge at all on either of the other three nights he worked in the yard. The most that can be said is that the testimony, if believed, would warrant the jury in drawing the inference that he might have been on the top of the car at some time during his service in the yard. It would also justify the conclusion that he saw the bridge and knew its location. But the vital question to be determined by the testimony was whether Robson knew or by the exercise of ordinary prudence should have known the proximity of the top of the cars to the bridge and the danger arising therefrom. A knowledge of the existence of the bridge does not presume a knowledge of its height above the trains that pass under it. Common experience teaches the difficulty in accurately determining the height of an object under such circumstances. Standing on the ground or on the top of a car at any distance from a bridge, it certainly would be extremely difficult for the brakeman to de-

termine whether standing erect on the top of the car he could safely pass under the bridge where there was only eight inches difference between his height and the space between the car and the bridge. Had this space not exceeded two or three feet the difficulty of passing the bridge would have been obvious and the inability of one standing erect on a car to pass safely would have been apparent. Such, however, was not the fact; on the contrary, the height of the bridge was sufficient to induce the belief without close observation that the brakeman could pass in safety. Robson might have gone under the bridge on the top of a car without knowing the exact distance between the car and the bridge. He might have been in a stooping position, and, his attention at the time being directed to the performance of his duty he might have failed to observe the exact distance between the car and the bridge. So far as the evidence discloses he may not have been on the top of the car at all on any one of the three previous nights he was at work in the freight yard. He had some duties to perform which did not require him to be on top of the car. If he is to be charged with knowledge of the distance of the bridge above the car and hence of the danger of passing under the bridge, it is incumbent upon the defendant to show that he had the opportunity to know and appreciate the danger. Whether that burden was met was clearly a question for the jury and not the court to determine.

The cases relied on by the appellee are clearly distinguishable from the one at bar. Four of them were cases of nonsuit where the defendant produced no evidence. In another case, binding instructions were given for the defendant. In all of them there was no doubt that the deceased was perfectly familiar with the danger which resulted in his death. That is a question of disputed fact in the present case, and is necessarily for a jury.

The judgment is reversed with a venire facias de novo.