# Feussner *v.* Wilkes-Barre and Hazleton Railway Company, Appellant.

*Negligence—Master and servant—Railroads—Shifting of freight —Cars on adjoining tracks—Skid between cars—Slipping of skid —Fall of workman—Death—Assumption of risk—Reliance on master's judgment—Obvious danger—Customary appliance.*

1. If the master gives the servant to understand that he does not consider the risk one which a prudent person should refuse to undertake, the servant has a right to rely upon the master's judgment, unless his own is so clearly opposed thereto that, in fact, he does not rely upon the master's opinion. A servant is not called upon to set up his own unaided judgment against that of his superiors, and he may rely upon their advice and still more upon their orders, notwithstanding many misgivings of his own.

2. Where in an action against a railroad company to recover for the death of plaintiff's husband while engaged in defendant's employ in shifting freight from cars standing on adjoining tracks, it appeared that the freight was transferred by means of a skid five feet in length placed between the cars, with the ends overlapping the sides of the cars from three to five inches; that the conductor who was in charge placed the skid in position and directed deceased to walk backward thereon in order to hold the loaded truck in place; that while deceased was attempting to pull the truck onto the skid the end of the skid slipped from the edge of the car precipitating the deceased and the truck to the ground, fatally injuring the deceased; and that there were no cleats or catches at the ends of the skid, which had been in use for five years, although there was evidence, though strongly contradicted, that such attachments were usual and customary, the questions whether the skid was reasonably safe and proper and whether the deceased assumed the risk were for the jury and a verdict for the plaintiff will be sustained.

3. In view of the fact that the skid had been used for a considerable time with no fastenings and without accident, it cannot be said it was imminently dangerous.

Argued April 12, 1917.    Appeal, No. 105, Jan. T., 1917, by defendant, from judgment of C. P. Luzerne Co., Dec. T., 1913, No. 888, on verdict for plaintiff, in case of Margaret Feussner v. Wilkes-Barre and Hazleton Railway Company.    Before Brown, C. J., Mestrezat, Potter, Frazer and Walling, JJ.    Affirmed.

Trespass to recover damages for personal injuries.    Before Strauss, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $5,095 and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were in refusing to direct verdict for defendant and refusing to enter judgment for defendant n. o. v.

*John H. Bigelow* and *John T. Lenahan,* with them *R. B. Sheridan,* for appellant.—Decedent assumed the risk of his employment: Northern Central Ry. Co. v. Husson, 101 Pa. 1; Sykes v. Packer, 99 Pa. 465; Kane v. St. Louis, Kansas City & Colo. R. R. Co., 112 Mo. App. 650, 87 S. W. Repr. 571; Southern Ry. Co. v. Foster's Admr., 111 Va. 763, 69 S. E. Repr. 972; Ladwig v. Jefferson Ice Company, 141 Wis. 191, 124 N. W. Repr. 407; Southern Pacific Co. v. Seley, 152 U. S. 145; Grand v. Michigan Central R. R. Co., 83 Mich. 564, 47 N. W. Repr. 837; Henderson v. Coons, 31 Ill. App. 75; Vining v. New York & New England R. R. Co., 167 Mass. 539, 46 N. E. Repr. 117; Curtis v. Chicago & Northwestern Ry. Co., 95 Wis. 460, 70 N. W. Repr. 665; Michigan Central R. R. Co. v. Austin, 40 Mich. 247; Clark v. Missouri Pac. Ry. Co., 48 Kansas 654, 29 Pac. Repr. 1138; Chicago, Burlington & Quincy R. R. Co. v. Abend, 7 Ill. App. 130; Fletcher v. Freeman-Smith Lumber Co., 98 Ark. 202, 135 S. W. Repr. 827; Webb v. Gulf, Colo. & Santa Fe Ry. Co., 65 S. W. Repr. 684; Mobile & Ohio R. R. Co. v. Healy, 109 Ill. App. 531; Mowrey v. Frazier & Foster, 120 S. W.

Repr. 289; Beckman v. Anheuser Busch Brewing Association, 72 S. W. Repr. 710.

The appliance complained of was the customary one: Kehler v. Schwenk, 144 Pa. 348; Dooner v. Pres., Mgrs. & Co. of the Del. & Hudson Canal Co., 171 Pa. 581; Cunningham v. Fort Pitt Bridge Works, 197 Pa. 625; Miller v. Republic Chemical Company, 251 Pa. 593.

*Abram Salsburg,* with him *Nathaniel Jacobs* and *Mose H. Salsburg,* for appellee.—Whether deceased assumed the risk of doing the work in the manner required of him was for the jury: Collins v. Philadelphia & Reading Ry. Co., 244 Pa. 210; Ainsley v. Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co., 243 Pa. 437; Williams v. Clark, 204 Pa. 416; Madden v. Lehigh Valley R. R. Co., 236 Pa. 104; Valjago v. Carnegie Steel Co., 226 Pa. 514; Bardsley v. Gill, 218 Pa. 56; Obert v. Hammermill Paper Co., 249 Pa. 456; Bennett v. Standard Plate Glass Co., 158 Pa. 120; Philadelphia, Wilmington & Baltimore R. R. Co. v. Keenan, 103 Pa. 124; Creachen v. Bromley Bros. Carpet Co., 214 Pa. 15; Miller v. James Smith Woolen Machinery Co., 220 Pa. 181.

OPINION BY MR. JUSTICE FRAZER, May 22, 1917:

Defendant appealed from a judgment entered on a verdict in favor of the widow and children of Adam Feussner for his death resulting from injuries sustained while in defendant's employ. At the time of the accident, Feussner was engaged as an extra brakeman on a freight car operated over defendant's electric railway between Wilkes-Barre and Hazleton. Between the terminals is located a station known as the Georgetown Freight Transfer at which place defendant's tracks connect with tracks of the New Jersey Central Railroad. At this point is a switch or siding for the transfer of freight to and from the two lines. In receiving freight, the car of the New Jersey Central road is at times coupled to defendant's train; if, however, the amount of freight for transfer is

not large removal is made directly from the car of one company to that of the other.  In making transfers in the latter manner, the cars to and from which goods are to be removed, are placed alongside of each other and a wooden platform, generally referred to as a "bridge" or "skid," laid from the door of one to the door of the other, over which the trainmen either carry or haul the freight on a two-wheeled hand truck.  The skid is made of planks five feet long, thirty inches wide and an inch and a half thick bolted together and has been in use at that station for at least five years and is without cleats or catches at the ends to prevent slipping.  When in use for transfer purposes the bridge is from four to four and a half feet above the ground and owing to the distance between the cars as they stand on adjoining tracks its ends overlap the sides of the cars to the extent of three to five inches, one end resting about four inches higher than the other on account of difference in elevation of the tracks of the two companies.  On the day of the accident defendant's train was in charge of the conductor, who directed its operation and gave orders to the brakeman.  Upon reaching the Georgetown Transfer a Central Railroad car containing freight to be transferred to defendant's car for shipment to Hazleton, was standing on the switch.  The conductor having placed the bridge in position directed Fuessner to transfer the merchandise consisting in part of a barrel of whiskey weighing about four hundred and fifty pounds.  The conductor assisted in loading the barrel on the truck and instructed Fuessner to walk backwards over the bridge, for the purpose of holding it in place by his weight and prevent slipping as the wheels of the truck came in contact with the end of the plank.  In complying with these instructions and while attempting to pull the truck onto the skid the end slipped from the edge of the car and fell to the ground carrying Feussner, the truck and the whiskey with it and inflicting injuries upon him which subsequently resulted in his death.

The several assignments of error raise the same question, namely, whether the trial judge erred in submitting the case to the jury. Although the statement of claim charged negligence in several respects, the case finally resolved itself into the questions whether the platform furnished deceased was a reasonably safe and proper one for the purpose used and whether the risk was one assumed by deceased.

Defendant argues the evidence shows the skid furnished was the usual and customary appliance in use for such work, and that the testimony to the contrary was a mere scintilla, not warranting submission of the question of defendant's negligence to the jury. A number of witnesses on behalf of defendant testified the skid was identical with those in general use, and that the use of cleats or other attachments to prevent slipping when being used as in this case was not customary. One witness, however, stated on cross-examination, in answer to a question as to the usual manner of securing skids to prevent sliding, that "there are a dozen and one different ways but we don't use any" and admitted that around transfer stations he had seen skids with claws or hooks attached to prevent slipping. Another witness for defendant testified that at Ashley station, on defendant's road, freight was transferred by use of a platform with claw or hook attachments at the ends. A witness for plaintiff, with long experience in handling freight, said in transferring freight from car to car the general practice was to fasten the skids at each end by attaching to them either spikes or cleats. The testimony of another witness, an expert, was to the same effect and that to use the platform as was done in the present case without its being made secure, was dangerous. True, this witness admitted, on cross-examination, to an experience confined to terminal stations and that he was without knowledge of the practice or custom at way stations. On the whole there was sufficient evidence bearing upon this question, to warrant submission to the jury and this

was done in a fair charge in which defendant's rights were fully protected.

The finding of the jury that defendant failed to furnish deceased with a reasonable safe appliance in accordance with the usual and customary practice in connection with the transfer of freight from car to car under similar conditions, constituted a finding of defendant's negligence, and the remaining question is whether, notwithstanding such evidence, the risk was an obvious and apparent one assumed by plaintiff as incident to the performance of his work. Deceased was at the time directly under and subject to the orders of the conductor in charge of the train, who was therefore the person to whose instructions he was bound to conform within the meaning of the Act of June 10, 1907, P. L. 523: Ainsley v. Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co., 243 Pa. 437. The skid was put in place by the conductor, who also assisted deceased in loading the barrel on the hand truck and directed him to walk backward that his weight might hold the skid in place and while engaged in performing the work assigned to him in the manner directed by his superior, the accident happened. Deceased was justified in obeying the instructions received, unless the method of performance required by the order rendered the work obviously and imminently dangerous. The rule in such case was stated in Williams v. Clark, 204 Pa. 416, 418, as follows: "If the master gives the servant to understand that he does not consider the risk one which a prudent person should refuse to undertake, the servant has a right to rely upon his master's judgment, unless his own is so clearly opposed thereto that, in fact, he does not rely upon his master's opinion. A servant is not called upon to set up his own unaided judgment against that of his superiors, and he may rely upon their advice and still more upon their orders, notwithstanding many misgivings of his own. The servant's dependent and inferior position is to be taken into consideration; and if the master gives him positive orders to go on with

the work, under perilous circumstances, the servant may recover for an injury thus incurred, if the work was not inevitably and imminently dangerous."

In view of the testimony that the bridge in question had been used for the same purpose without fastenings for a considerable period of time, it cannot be said that its use on this occasion was so imminently dangerous as to require the servant to set up his judgment against that of his superior and refuse to obey the order given; the question was accordingly a proper one for the jury: Collins v. Philadelphia & Reading Ry. Co., 244 Pa. 210.

The judgment is affirmed.