# Kelly *v.* Delaware, Lackawanna & Western R. R. Co., Appellant.

*Negligence—Master and servant—Coal mines—Hauling cars—Accident to driver—Assumption of risk.*

Where a minor, plaintiff, was employed as a helper to a muledriver and assisted in driving three mules, which hauled empty cars up a grade, and, while engaged in unhooking the mules from one of the cars as it reached the top of the incline, the mule team started up and jerked the car in such a manner that the plaintiff was overbalanced and fell between the bumpers of the cars and was seriously injured, the questions of the defendant's negligence and the plaintiff's contributory negligence are for the jury.

Where the plaintiff was youn.; and unfamiliar with the precautions taken in other mines to safeguard employees engaged in such service, the conditions under which he worked may have been dangerous, although they did not appear to be so much so as to threaten immediate injury, and the court would not have been warranted in determining as a matter of law that he voluntarily assumed the risk of the injury which he suffered.

Argued March 7, 1918. Appeals, Nos. 42 and 43, March Term, 1918, by defendant, from judgment of C. P. Lackawanna County, June Term, 1913, No. 379, on verdict for plaintiff in case of John Kelly by his father and next friend, Michael J. Kelly, and Michael J. Kelly in his own right, v. Delaware, Lackawanna & Western Railroad Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before TERRY, P. J., specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiffs for $1,000 in favor of John Kelly and $500 in favor of Michael J. Kelly and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were in refusing to direct verdict for defendant and refusing to enter judgment for defendant n. o. v.

*J. H. Oliver,* and with him *D. R. Reese* and *Knapp, O'Malley, Hill & Harris,* for appellant.—The plaintiff assumed the risk of his employment: Fricker v. Penn Bridge Co., 197 Pa. 442; Dooner v. Canal Co., 171 Pa. 581; Boyd v. Harris et al., 176 Pa. 484; Nuss v. Rafsnyder, 178 Pa. 397; Fulford v. L. V. R. Co., 185 Pa. 329; Marean v. Railroad, 167 Pa. 220; Russell v. Hutchinson, 15 W. N. 482; Reese v. Clark, 146 Pa. 465; Sandt v. North Wales Foundry Co., 214 Pa. 215; Peters v. Coal Company, 423 Pa. 241; Clader v. Gangewere, 63 Pa.

119, (1919).] Arguments—Opinion of the Court.
Superior Ct. 174; Cummins v. Machine Co., 65 Pa. Superior Ct. 234; Handley v. Steel Co., 256 Pa. 44; Hurley et al. v. Rieck Co., 256 Pa. 97; Stitzel v. A. Wilhelm Co., 220 Pa. 564; Betts v. Winter et al., 195 Pa. 346.

*Philip V. Mattes*, and with him *Morgan S. Kaufman*, for appellees.—The case was for the jury: Feussner v. W. B., Etc., Co., 258 Pa. 303, page 307; Brennan v. Coal Co., 252 Pa. 178; Graham v. Newburg, Etc., Co., 18 W. Va. 277; 18 S. E. 584; Brenneman v. Glatfelter, 61 Pa. Superior Ct. 64; Rummell v. Dilworth, 111 Pa. 343, at p. 350; Robson v. Lehigh Valley R. Co., 236 Pa. 89; Collins v. P. & R. Co., 63 Pa. Superior Ct. 371.

OPINION BY PORTER, J., February 28, 1919:

John Kelly, a boy just past sixteen years of age, was employed in one of the mines of the defendant company as a helper to a driver, these two men had charge of a team of three mules and were engaged in the work of hauling loaded coal cars from the workings in the mine to the shaft. Along this passageway there was a grade. The cars were hauled from the chambers, or headings, into the passageway, where four or five cars were coupled together, for the trip to the foot of the shaft, and were then hauled to the foot of the grade. The cars were then uncoupled and hauled one at a time to a short distance beyond the top of the grade, near a head block; the first car was then securely spragged so as to remain stationary, and the other cars were hauled up one at a time and coupled up, and from that point the trip was made to the foot of the shaft. The men were using a team of three mules, hitched in single file, the head of the front mule being about twenty-five feet from the car which was being hauled. After the first car had been thus hauled to the top of the incline, Kelly, or Keeley, the driver with whom he was working, would alternately take the mules back and bring up another car, the other man remaining at the top of the incline ready to sprag

the car when it was brought up, the man who was driving would, when he approached the standing cars, give an order to the mules which caused them to turn out to the left and when the car had reached the proper position would command them to stop and he would unhitch the stretcher hook from the car, which then bumped against the standing cars and was coupled up to the trip. At the time now in question they had thus hauled two cars up to the top of the grade and Kelly took the team of mules and went back for the third car, Keeley remaining at the top of the grade, when the former arrived with the third car at the proper point, the mules turned out to the left of the standing cars and upon his order stopped. He then reached down to unhitch the stretcher hook from the car with his left hand, his right hand being on the corner of the car. While in the act of detaching the stretcher hook and getting the spreader from out between the cars, the mule team started up, and jerked the car, which struck Kelly on the shoulder, overbalanced him and he fell in such a manner that while his left foot was in the air it was caught between the bumpers of the cars and so crushed as to require amputation. The accident occurred prior to the approval of the Workmen's Compensation Law and this action was brought to recover damages for the injury. The plaintiffs recovered verdicts and judgments in the court below and the defendant appeals.

The learned judge of the court below submitted the questions of the defendant's negligence and the contributory negligence of the plaintiff to the jury, and to this action all of the assignments of error go; the defendant contending that the court should have given binding instructions in its favor. John Kelly was but sixteen years of age, he had worked probably four months in the mine where he received his injury, had never worked in any other mine and had had no opportunity to observe the precautions taken in other mines to guard against injury to those employed to do the work in which he was

engaged. He had been instructed to take his orders from the driver with whom he was working and he was so doing at the time he was injured. Ordinary care and reasonable prudence on the part of the master or employer require that, for the performance of a particular service, a sufficient number of servants be employed to enable it to be performed in safety; and the employer and employee are both bound to exercise such reasonable care as is commensurate with the danger of the service, and that implies such caution, watchfulness and foresight as careful, prudent persons, engaged in such business and doing such service, usually exercise. "It is true the master is not responsible for accidents occurring to his servants from the ordinary risks and dangers which are incident to the business in which he is engaged; for in such case the contract is presumed to be made with reference to such risks. But on the other hand when the master voluntarily subjects his servants to danger, such as, in good faith, he ought to provide against, he is liable for an accident arising therefrom": Patterson v. Pittsburgh & Connellsville R. R. Co., 76 Pa. 389; Kehler v. Schwenk, 151 Pa. 505. There was in this case testimony, the admission of which is not assigned for error, by witnesses of long experience in the business, that in performing the service in which Kelly was engaged, unhitching a three-mule team from a moving car, it was the general practice in mines of that region to have a man, called a "leader," at the head of the team, for the purpose of preventing the mules from suddenly starting, and that unless this precaution was taken it was dangerous for the driver to unhitch the stretcher when the cars were being bumped. True this testimony was squarely contradicted by a number of witnesses called by the defendant and this was the fact most earnestly contested at the trial. It was an undisputed fact that these mule teams were driven without lines and that the only manner in which the driver was expected to control them was by his voice. The business is one involving its own peculiar dangers,

with which the average man is not familiar, and, in these circumstances, evidence as to the general practice in the business, for the protection of employees, is properly to be considered: Kehler v. Schwenk, supra; Feussner v. Wilkes-Barre & Hazleton Ry. Co., 258 Pa. 303; Weaver v. Iselin, 161 Pa. 386. The question of the negligence of the defendant company in failing to provide a sufficient number of men to properly manage the team was, under the evidence, for the jury, and that question was submitted under instructions in which the defendant's rights were fully protected.

This plaintiff was very young, he was not familiar with the precautions taken in other mines to shield employees engaged in such service from the accident which befell him, the conditions under which he worked may have been dangerous, but it did not appear to be so much so as to threaten immediate injury. In view of the fact that the defendant had in this case called a number of experts who testified that it was not necessary, under the conditions which surrounded this plaintiff, to have a man at the head of the team in order to protect him from danger, and that he had done the work in this manner for some time, the court would not have been warranted in determining, as matter of law, that the plaintiff had been guilty of contributory negligence or that he had voluntarily assumed the risk of the injury which he suffered: Brenneman v. Glatfelter, 61 Pa. Superior Ct. 68; Collins v. Philadelphia & Reading Ry. Co., 63 Pa. Superior Ct. 371; Robson v. Lehigh Valley R. R. Co., 236 Pa. 89; Brennen v. Meadow Lands Coal Co., 252 Pa. 178; Feussner v. Wilkes-Barre & Hazleton Ry. Co., supra. This case was for the jury and the evidence was sufficient to warrant the verdict.

The judgment is affirmed.